WILLIAM GREEN, an Infant, by EDWARD J. GREEN, his Guar-
dian ad Litem, Respondent, v. METROPOLITAN STREET RAIL-
WAY COMPANY, Appellant.

EVIDENCE — PRIVILEGED COMMUNICATION — CODE CIV. PRO. § 834.
Testimony as to how an accident happened, although the witness acquired
his information from the injured party while attending him in a profes-
sional capacity as a surgeon, does not come within the prohibition of
section 834 of the Code of Civil Procedure, unless it also appears that
the information was "necessary to enable him to act in that capacity;"
and, in the absence of evidence of that fact, the exclusion of such testi-
mony, upon the ground that it is privileged, constitutes reversible error.

*Green* v. *Met. St. Ry. Co.,* 65 App. Div. 54, reversed.

(Argued April 14, 1902; decided May 13, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 13, 1901, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The action was brought to recover damages for injuries received by the plaintiff from being run over by one of the defendant's cable cars, in the city of New York. The plaintiff was a boy of about twelve years of age, living with his father on Columbus avenue, in the vicinity of the scene of the accident. He had been delivering goods between eight and nine o'clock in the evening, and was returning to his employer's store; when, upon reaching a point in Columbus avenue between street crossings, he stopped near a pillar of the elevated railroad and looked up and down the avenue. He saw a car coming from the north, and another, about the middle of the block, coming from the south. Without waiting for them to pass, he started to cross the avenue and was struck by the south-bound car. According to his testimony, he was thrown into the air, fell upon the track, and was caught on a small fender under the platform of the car, in front of the wheels. He was carried in that way about one hundred feet, when he fell from the fender and the car wheel cut off his leg. The trial court submitted to the jury the question whether the accident occurred through the negligence of the defendant's servants and instructed them, whatever the degree of negligence on the part of the plaintiff in the original contact with the car, that, from the moment he was caught upon the fender, a new relation existed between the parties and any act, or omission, on the part of the defendant, exhibiting a lack of care on its part in the then situation, was sufficient to charge it with negligence.

The plaintiff recovered a verdict and the judgment thereupon was affirmed by the Appellate Division, in the first judicial department, by a divided court. The defendant appealed from the affirmance to this court.

*Charles F. Brown*, *Theodore H. Lord* and *Henry A. Robinson* for appellant. The statement made by the plaintiff to Dr. Moorhead, the ambulance surgeon, as to how the accident happened, can in no aspect be regarded as information necessary to the plaintiff's treatment, and should have been admitted. (*People* v. *Koerner*, 154 N. Y. 355; *Brown* v. *R., W. & O. R. R. Co.*, 45 Hun, 439; *Hoyt* v. *Hoyt*, 112 N. Y. 493; *People* v. *Schuyler*, 106 N. Y. 299; *Morris* v. *Ry. Co.*, 148 N. Y. 88.)

*Franklin Pierce* and *William M. K. Olcott* for respondent. The exception taken to the refusal of the court to allow Doctor Moorhead to state what Willie Green had said to him as to how the accident happened, is not well taken. (*Davis* v. *Supreme Lodge*, 165 N. Y. 163; *Nelson* v. *Vil. of Oneida*, 156 N. Y. 219; *Fox* v. *U. T. Co.*, 59 App. Div. 368.)

GRAY, J. I think this judgment should be reversed, and that a new trial should be had, for the error in excluding the testimony of the witness, Moorhead, when asked by defendant's counsel to state "what he, (the plaintiff), said, if anything, as to how this accident happened." Moorhead was a surgeon, attached to the J. Hood Wright Hospital, and was in charge of the ambulance, which was summoned to convey the plaintiff, after meeting with his accident. It will be observed that the question called for no information, which was acquired by the surgeon to enable him to act as such. It called for evidence, merely, of what had preceded, and had caused, the accident, according to the plaintiff's knowledge. Section 834 of the Code of Civil Procedure, whose privilege has been extended to cover this question, applies, by its language, to cases where information has been acquired by a physician, or a surgeon, while "attending a patient in a professional capacity, and which was *necessary to enable him to act in that capacity*." We may, readily, admit that Dr. Moorhead acquired the information, which the question called for, while

attending the plaintiff in a professional capacity, and, still, we would be far from the point of the legislative purpose in enacting the section of the Code. That was that the information should be of a character necessary to enable Dr. Moorhead, or the hospital staff, to act professionally upon the case. As it was observed in *Edington* v. *Ætna Life Ins. Co.*, (77 N. Y. 564), " it is not sufficient to authorize the exclusion that the physician acquired the information while attending the patient ; but it must be the necessary information mentioned." The object of the statute, as we are bound to presume, was the accomplishment of a just and salutary purpose; which was that the relations between physician and patient should be protected against public disclosure, so that the patient might unbosom himself, freely, to his medical adviser and, thus, receive the full benefit of his professional skill. Surely, it could not have been intended that any truthful version of a narrative of the events leading to an accidental injury should be excluded and that was all this question called for, as it had come from the sufferer's lips, and when fresh in his recollection. It is rather more consonant with the requirements of justice, that no witness should be prevented from giving such evidence. The burden was upon the plaintiff, in seeking to exclude this evidence of Dr. Moorhead, to bring the case within the provision of the statute, (*People* v. *Koerner*, 154 N. Y. 355), and he did not do so. It was proper to exclude testimony as to any information acquired, which was of a nature to enable a surgeon to treat the plaintiff; but it is unreasonable to say that information of how the accident happened was such as must, or might, have affected the surgical treatment required. Surely, there must be a line, which reason indicates as that where the statutory inhibition ceases. The plaintiff lost his leg, by being run over by the car, and the question of defendant's legal liability was a narrow one, as presented by the trial court, in view of its assumption that the plaintiff was guilty of contributory negligence ; hence, all the light, possible to exhibit how the injury was occasioned, should have been permitted upon the case. It seems to me that the exclusion of

this evidence was an application of the Code provision, beyond all legitimate and reasonable limits, and was not in accord with the recent decision of this court in *Griffiths* v. *The Metropolitan Street Railway Company* (171 N. Y. 106).

The judgment should be reversed and a new trial granted, with costs to abide the event.

WERNER, J. (dissenting.) I cannot concur in the opinion about to be adopted herein. The appellant's counsel contends that this judgment should be reversed for errors in the ruling of the trial court in excluding the evidence of Dr. Moorhead as to conversations he claims to have had with the plaintiff. This physician was called as a witness for the defendant, and testified that he was connected with the J. Hood Wright Memorial Hospital; that he responded with the hospital ambulance to the call to attend the plaintiff; and that after the boy had been placed in his custody he had several conversations with him. Being examined by the counsel for the plaintiff he testified: " It was my duty as surgeon to take statements for the purpose of prescribing for patients and giving them aid and having it entered in the books of the institution. Whatever I said to Willie Green and he said to me was in reference to his condition. I obtained that information for the purpose of prescribing for him. Now I am employed by the Metropolitan Street Railway Company." In response to questions by counsel for the defendant he testified: " Aside from prescribing for him or ascertaining anything concerning his ailment, I don't know as I asked him any questions concerning the way in which the accident occurred, for the purpose of getting information, but patients sometimes volunteer a great deal of information which is not essential to treat them. I had several conversations with him. I asked him how the accident occurred." He further stated in answer to the questions of the plaintiff's counsel that the rules of the hospital required him to ask questions to find out how an accident occurred and the circumstances, for the purpose of recording the information thus acquired in a book, and, in response to the defendant's

attorney, he added, that in the course of his duties as an
ambulance surgeon he ascertained the causes of accidents. He
was then asked to state what the plaintiff said to him, if any-
thing, as to how the accident happened. This was objected
to by counsel for the plaintiff, and the court sustained the
objection as calling for information within the prohibition of
section 834 of the Code of Civil Procedure. To this ruling
the counsel for the defendant duly excepted. Section 834 has
recently been under consideration by this court in the case of
*Griffiths* v. *Met. St. Ry. Co.* (171 N. Y. 106), where the
same physician was a witness, and we held that his testimony
as to conversations with the plaintiff was improperly ruled
out. We think, however, that the *Griffiths* case is clearly
distinguishable from the one at bar. In that case there was
not only considerable doubt whether the relation of physician
and patient had ever existed or, if it had, whether it contin-
ued down to the time of the conversation which was excluded,
but the physician expressly stated that the information which
he acquired as to the occurrence of the accident was distinct
from any relation existing between himself and the plaintiff as
physician and patient, and the plaintiff proved no facts show-
ing that this was not true. In the case before us the physi-
cian distinctly asserted that whatever information he acquired
from the patient was in reference to his condition and for the
purpose of prescribing for him. He did interject the obser-
vation that patients sometimes volunteer a great deal of infor-
mation that is not essential to their treatment, but in spite of
this it plainly appears that the information which he acquired
from the defendant was obtained while the relation of physi-
cian and patient existed, that it was received by him in his
professional capacity and that he regarded it as necessary to
enable him to act in that capacity. It may be admitted
that, as a general rule, the assertion or admission of the
physician as to the purpose for which he obtained infor-
mation from the patient is not the most reliable test to
apply in the admission or exclusion of such evidence. There
are cases in which the evidence itself can furnish the only

reliable guide.  This is not one of those cases.  The doctor asserts that all the information he obtained from the plaintiff was necessary for purposes of professional treatment.  While it is true that the question which was objected to and ruled out simply called for statements made by the plaintiff as to how the accident happened, it is equally true that we cannot say, as matter of law, that the statements thus made were not necessary to enable the doctor to prescribe for and treat the plaintiff.  The injury to the plaintiff's leg was visible.  No statement was necessary to determine the proper treatment for that.  But the plaintiff had been dragged for a distance of about one hundred feet.  His appearance, aside from his wounded leg, must have indicated that he had suffered a terrible ordeal.  He was a boy of tender years who could, perhaps, describe with greater accuracy what had happened to him than he could detail the subjective results or manifestations of the accident.  Under just such conditions an intelligent and skillful physician might much more surely ascertain the probable or possible nature or extent of injury by getting at the facts of the accident than he could by the usual methods of the diagnostician.  We think, upon the whole, that the plaintiff in this case has successfully sustained the burden of showing that the evidence excluded consisted of information which was necessary to enable the physician to treat the plaintiff professionally.  (*People* v. *Koerner*, 154 N. Y. 355 ; *Fisher* v. *Fisher*, 129 N. Y. 654 ; *People* v. *Schuyler*, 106 N. Y. 298 ; *Edington* v. *Ætna Life Ins. Co.*, 77 N. Y. 564; *Nelson* v. *Village of Oneida*, 156 N. Y. 219.)

The judgment of the Appellate Division should be affirmed, with costs.

PARKER, Ch. J., O'BRIEN and CULLEN, JJ., concur with GRAY, J. ; MARTIN and VANN, JJ., concur with WERNER, J.

Judgment reversed, etc.