### DUGGAN v. PHELPS et al.

(Supreme Court, Appellate Division, Second Department. April 24, 1903.)

**1. INJURY TO EMPLOYÉ—NEGLIGENCE OF MASTER.**

Stevedores are negligent in not furnishing a longshoreman, hired to stow freight in the hold of a steamer, a safe place to work in, where they, in preparing the ship for loading, leave the thwart-ship beam across the hatchway, without securing it in place, and the rope with which the freight is being lowered comes in contact, in its play, with the beam, throwing it into the 'hold, as they, in the exercise of due care, should have seen might happen, and which would not have happened if the beam had been secured in the usual manner.

**2. SAME—FELLOW SERVANTS.**

Where a longshoreman was hired by stevedores to dock a steamer, and after this was done he was laid off till the riggers of the stevedores prepared the ship for loading, when he was hired by the stevedores to load it, the negligence of the riggers in leaving the thwart-ship beam across the hatchway unfastened, which, when struck by the rope with which the cargo was being lowered, was thrown on him, was not that of his fellow servants.

**3. WITNESSES—PRIVILEGED COMMUNICATIONS—WAIVER.**

Where plaintiff after his injury was taken in an ambulance to a hospital, and the next day went home, where he was thereafter treated by his physician, he does not, by calling his physician to testify as to his injuries, waive his privilege as to the ambulance surgeon who treated him in the hospital, so as to allow him to testify as to his condition when he first saw and treated him.

**4. SAME—PHYSICIAN.**

A witness who testifies that he was the ambulance surgeon who had charge of plaintiff, and that he treated him at the hospital, is asked to speak in the relation of physician to patient when asked to state plaintiff's condition at the time he "first saw him, that he treated him."

Appeal from Special Term, Kings County.

Action by Patrick Duggan against Howard Phelps and others. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant Howard Phelps appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

L. Sidney Carrere (Edward P. Mowton and Henry Bogert Clark, on the brief), for appellant.

George W. Bristol, for respondent.

JENKS, J. The action is by a servant against a master for negligence. The plaintiff, a longshoreman, hired by the defendants, who are stevedores, was at work in the hold of a steamship stowing freight. His complaint is that he was struck on the head and injured by the fall of a heavy iron beam. This beam is known as a "thwart-ship beam." It runs crosswise of the hatchway, and is removable. The

rope conveying a load to the hold disturbed the beam so that it fell. The negligence charged is failure to secure the beam in its place.

It must be borne in mind that this beam was not an appliance of the work doing by the plaintiff. Its sole purpose was to strengthen the ship or to support the hatch. Its fellow beams had been removed by the riggers, and it could have been removed without interfering with the work upon which the plaintiff was engaged. It was left there presumably upon the ground that removal was not necessary, and the evidence is that, in preparing a hatchway for the storage of cargo in the hold, it was not always the custom to remove all of the crossbeams. The place of work was the hold of the ship in relation to the open hatch above, through which the cargo was brought down into the ship. The beam was left across the open hatch by the servants of the defendants, who prepared the hatch to receive the cargo. If the defendants decided not to remove the beam, and if they foresaw, or, in the exercise of due care, should have foreseen, that the rope, in its play, might come into contact with the beam so as to disturb it, and so cast it down into the hold, then, in the course of their duty to prepare a place for work reasonably safe, they were bound to use ordinary care to secure the beam.

There is evidence sufficient to warrant a finding of the jury that due care was not observed in securing this beam, and that, if it had been secured in the usual manner, the play of the rope would not have disturbed it. It is evident that any neglect to secure the beam properly was that of the riggers employed and directed by the defendants. It is insisted that the relation of fellow servants between them and the plaintiff bars recovery. It appears that the accident happened at 5 o'clock in the afternoon. The plaintiff testified that he had been working early in the morning of that day in docking the steamship, that he was then laid off in order that the riggers might prepare the ship, and that after this was done he went to work loading the cargo, having been hired anew for that purpose. In fine, a longshoreman was hired for a certain work, did the work, and was discharged. Thereafter the servants of his former master prepared the ship for loading. Thereupon the plaintiff was hired again for a different work, and began his second employment after the place of work had been prepared for him. I think that, under such circumstances, the plaintiff and the riggers, though employed by a common master, were not engaged in a common service, for, when the plaintiff entered upon his second employment, it was after the work of preparing a suitable place for his work had been completed. Kranz v. Long Island R. Co., 123 N. Y. 1, 25 N. E. 206, 20 Am. St. Rep. 716; Schmit v. Gillen, 41 App. Div. 302, 58 N. Y. Supp. 458; Eastland v. Clarke, 165 N. Y. 420, 59 N. E. 202.

It is insisted that the court erred in excluding the testimony of Dr. Chamberlain. The plaintiff testified that after the accident he was taken in an ambulance to a hospital; that he left there the next day, and was thereafter treated at home by his physician, Dr. Mackey, who testified in detail as to the injuries and the treatment. The defendant called Dr. Chamberlain, who testified that he was the ambulance surgeon who had charge of the plaintiff, that he treated him in the hos-

pital, and that he could state what he did, and what was the condition of the patient. He was asked: "Q. Now I ask you to state what condition Mr. Duggan was in at the time that you first saw him, that you treated him?" It was objected that the question was incompetent and ·immaterial, and that "this was the physician who attended the plaintiff, who is not allowed to disclose matters discussed while treating him professionally," and the objection was sustained. The learned counsel for the appellant argues with much ability and ingenuity that when the plaintiff called his own physician he waived his privilege, and that the policy of the law should not permit the plaintiff to close the mouth of Dr. Chamberlain. But the statute, as interpreted, is against him. It is held that what is seen by a physician in looking at the patient is within the privilege (Grattan v. Metropolitan Life Ins. Co., 92 N. Y. 274, 44 Am. Rep. 372); that it is not necessary that the physician should be employed by the patient, or that there should be a contract relation between them (Renihan v. Dennin, 103 N. Y. 573, 9 N. E. 320, 57 Am. Rep. 770); that the plaintiff, by calling his physician to testify as to his disease and its treatment, does not waive his objection to the evidence of other physicians who had treated him at other periods (Hope v. Troy & Lansingburgh R. Co., 40 Hun, 438, affirmed in 110 N. Y. 643, 17 N. E. 873); and that although a patient gives evidence as to his condition both before his entrance to a hospital, and after he leaves it, he does not waive the privilege as to a physician who treated him in that interim (Barker v. Cunard Steamship Co., 91 Hun, 495, 36 N. Y. Supp. 256, affirmed in 157 N. Y. 693, 51 N. E. 1089). Dr. Mackey and Dr. Chamberlain could only speak as to different periods. If the waiver as to Dr. Mackey elicited evidence in reference to the same period as that when Dr. Chamberlain was in attendance, then a different question would be presented. The discrimination between the case at bar and the cases of Griffiths v. Met. St. Ry. Co., 171 N. Y. 106, 63 N. E. 808, and Green v. Met. St. Ry. Co., 171 N. Y. 201, 63 N. E. 958, is that in this case Dr. Chamberlain had testified that he was the ambulance surgeon who had charge of Mr. Duggan, that he recalled what he did for him, and that he treated him after he came to the hospital; and he was asked to state his condition at the time that he "first saw him, that he treated him." He was therefore asked to speak in the relation of physician to patient. The objection to the admission of his testimony was properly sustained.

The judgment and order should be affirmed, with costs. All concur.