## UNION PAC. R. CO. v. THOMAS.

(Circuit Court of Appeals, Eighth Circuit. April 19, 1907.)

No. 2,469.

1. WITNESSES—COMPETENCY—PRIVILEGED COMMUNICATION—PHYSICIANS.

Information which is proper and necessary to enable the physicians of a railroad company to treat an injured person, which is acquired by them from such person for that purpose while they are endeavoring to treat

her professionally, although against her protest, is a privileged communi-
cation, under section 5907, Comp. St. Neb. 1901.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 768–
772.]

2. SAME—ESSENTIALS—EMPLOYMENT BY THIRD PERSON.

The essentials of a privileged communication between physician and
patient are: (1) The confidential relation of physician and patient; (2)
the necessity and propriety of the information to enable the physician to
treat the patient skillfully in his professional capacity; and (3) its acquisi-
tion by the physician from the patient during the existence of the relation.

Such a communication is not deprived of its privileged character by
the fact that the relation is established at the instance of a third party.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§
768–772.]

3. SAME—WAIVER—VOLUNTARY TESTIMONY.

A patient waives his privilege by voluntarily producing, or introducing
at the trial, evidence of the confidential communication, and thereby ex-
empts the testimony of his physician thereto from all objections upon that
ground, because he thereby publishes it and deprives it of its confidential
character.

But neither the commencement of an action for an injury nor testi-
mony of the condition of the injured party has this effect.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 781,
782.]

4. TRIAL—CORRECTION OF ERRORS.

Errors in rulings and misstatements of facts by the court during the
progress of the trial, which are clearly corrected by it before the trial
closes, or in the charge of the court to the jury, are not generally fatal to
the judgment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 968–
973.]

5. SAME—CONDUCT—REMARKS OF JUDGE.

The opinion of the trial court expressed to the jury upon matters of
fact which are ultimately submitted to them for their decision is not re-
viewable error in a national court, so long as no rule of law is incorrectly
stated.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 80–84.]

6. TRIAL—INSTRUCTIONS—EXCEPTIONS—INSTRUCTIONS GOOD IN PART.

A general exception, which specifies no ground to a charge or a portion
of a charge to a jury, which embodies several propositions of law, is futile
if any of the propositions are sound.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 694.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District
of Nebraska.

Edson Rich (John N. Baldwin, on the brief), for plaintiff in error.
Francis A. Brogan, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge.   The plaintiff below was injured by the
collision of a car of the Union Pacific Railroad Company, in which she
was a passenger, with an engine upon another track, and she was taken
to the surgeon's room in the Union Station at Omaha, where two of
the physicians of the company attended her.   She brought this action
for damages caused by her injury.   The court refused, upon the ob-

jection of the plaintiff, to permit the medical men to testify to the examinations of the plaintiff which they made, to their conversations with her, and to the treatment which they gave her at the station, upon the ground that these were confidential communications under section 5907 of the Compiled Statutes of Nebraska of 1901, which reads in this way:

"No practicing attorney, counsellor, physician, surgeon, minister of the gospel, or priest of any denomination, shall be allowed in giving testimony, to disclose any confidential communication, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

There was evidence that the physicians went to the station on behalf of the company to render professional services to any who had been injured by this collision who were in need of such services, that the questions which they asked, the examinations which they made, and the information which the plaintiff gave to them were proper and necessary to enable them to treat her as physicians in a skillful way, and that they were made and given for this purpose; but that the plaintiff refused to permit any extended examination of her person in the station, and when one of the physicians gave her a sedative she refused to take it, and demanded that she be removed to her home.

The essential elements of a privileged or a confidential communication to a physician under the Nebraska statute are: (1) The relation of physician and patient; (2) information acquired during this relation; and (3) the necessity and propriety of the information to enable the physician to treat the patient skillfully in his professional capacity. These attributes characterize the communications which the defendant sought to prove by the physicians, and they were not deprived of their privileged character by the fact that the relation of physician and patient was established at the request of the defendant and against the protest of the plaintiff. Confidential communications by a patient to a physician are not less privileged because the relation is established at the request of a third person. The physicians who testified in this case attended the plaintiff for the purpose of treating her in their professional capacity, in the discharge of their duty to the company which employed them. All the information which they acquired from her was necessary or proper to enable them to do so. This information was obtained during the existence of the relation of physician and patient, which they themselves established and by virtue of that relation alone, and it was rightfully excluded under the statute of Nebraska. Raymond v. Ry. Co., 65 Iowa, 152, 21 N. W. 495; Keist v. C. G. W. Ry. Co., 110 Iowa, 32, 81 N. W. 181; Renihan v. Dennin, 103 N. Y. 573, 579, 9 N. E. 320, 57 Am. Rep. 770; Griffiths v. Metropolitan St. Ry. Co., 63 N. E. 808, 171 N. Y. 106; Colorado Fuel & Iron Co. v. Cummings, 46 Pac. 875, 8 Colo. App. 541.

One of the questions and one of the answers excluded read in this way:

"Q. You may state what Mrs. Thomas said to you. A. She said she had been injured in the wreck by being struck on the back of the neck."

Counsel contend that, if the entire communications were incompetent, yet this question and answer were not privileged, because it was not necessary for the physician to obtain the information they contain in order to enable him to skillfully treat the plaintiff. But before this answer was given the physician had testified that he went to the station for the purpose of administering to Mrs. Thomas, or any other passenger injured by the collision, in such a way as her condition might require; that he commenced to engage Mrs. Thomas in conversation for the purpose of ascertaining her condition and to administer remedies. The physician, therefore, was of the opinion that the information obtained by the answer to this question was reasonable to enable him to ascertain the condition of his patient and to administer proper remedies to her. It was in the light of this testimony that the answer was excluded, and, in view of the probability that it was necessary and proper for the physician to learn in what part of her person the plaintiff had been injured in order to properly treat her, no sound reason occurs to us why the information which this answer conveyed was not privileged. In support of the opposite view, counsel cite two cases, in which information acquired by a physician from his patient relative to the way in which the accident happened, as that the injured person fell through a trapdoor, has been held admissible. Harriman v. Stowe, 57 Mo. 93; Greene v. Metropolitan St. Ry. Co., 63 N. E. 958, 171 N. Y. 201, 89 Am. St. Rep. 807. But these are not controlling authorities, because the questions they present are not analogous to that in hand. It may be unnecessary for a physician to learn by what force an injury was inflicted upon the patient, while it may be indispensable for him to know upon what portion of his person this force was imposed in order to treat him skillfully. The question and answer were a part of a communication between the physician and his patient which consisted of the statement in the answer, of other conversation and of a limited examination. They were all of a privileged character and properly excluded.

Another position of counsel for the company is that the plaintiff waived her privilege because she testified to the communication, and thereby rendered the evidence of the physicians competent. Testimony voluntarily produced on behalf of a patient or a client of communications between him and his physician or his attorney undoubtedly waives his privilege and exempts the evidence of the physician or attorney relative to the communication from all objection on the ground that it is confidential or privileged, because the patient or client has thereby made it public. Hunt v. Blackburn, 128 U. S. 464, 470, 9 Sup. Ct. 125, 32 L. Ed. 488. But the reason for this rule is that the patient or client has deprived the communication of its confidential character by voluntarily causing it to be recited in public. Testimony that is not voluntarily given and evidence that does not recite the communication works no waiver, because the reason for the rule there ceases, and the rule becomes inapplicable. Burgess v. Sims Drug Co., 114 Iowa, 275, 86 N. W. 307, 54 L. R. A. 364, 89 Am. St. Rep. 359. Upon her direct examination the plaintiff testified that some one whom she did not know came into the station, wanted to examine her, took hold of her feet and felt them, and put his hand under the back of

her neck, and she told him she did not want him to touch her, but gave no evidence that this person was a physician, or that there was any farther communication between them. There was no other evidence upon this subject in her direct examination, and this constituted no waiver of the privilege, because it did not recite or set forth any of the conversations with her or any of the information relative to her condition or her injury, which the physicians secured by virtue of their professional relation and the defendant sought to introduce by means of them. It is true that on her cross-examination the plaintiff testified that the person who attempted to examine her said he was a Union Pacific doctor, that another person came who said he was not a Union Pacific doctor, and she refused to permit him to make an examination, and he accompanied her to her home. But this testimony was not volunteered, and there was no recital of the information secured by the doctors in it, and consequently no waiver of her privilege.

Counsel have cited in support of their claim of waiver here the argument of Prof. Wigmore, in section 2389 of the third volume of his work on Evidence, that the law ought to be that the commencement of an action on account of a physical ailment or the voluntary testimony of the plaintiff to his physical condition is a waiver of his privilege to prevent his physicians from testifying concerning them. Suffice it to say that the learned author himself concedes, and the statutes of the states and the unvarying current of authority demonstrate, that the settled law of the land is otherwise. Williams v. Johnson, 112 Ind. 273, 13 N. E. 872; McConnell v. Osage, 80 Iowa, 293, 45 N. W. 550, 8 L. R. A. 778; Green v. Nebagamain, 113 Wis. 508, 89 N. W. 520, 521. The only other authority brought forward to sustain the waiver is Sovereign Camp of Woodmen of the World v. Grandon, 64 Neb. 39, 89 N. W. 448, a case in which the introduction by the plaintiff of a written statement by the physician of the condition of the patient was held to be a waiver of the privilege to object to his testimony to that condition, a proposition which is conceded, but which has no application to the facts of this case.

Two physicians went to the hospital and examined the plaintiff, and one of them testified that he came to the conclusion that she was suffering from traumatic hysteria. The other physician had testified in the case and was in court, but no foundation had been laid to impeach him. Counsel complain because the first doctor was not permitted to testify that the second concurred with him in his conclusion. The ruling was right. The proposed evidence was nothing but hearsay.

There was evidence at the trial that the plaintiff was suffering from traumatic ulcers of the stomach, which might not be relieved by medical treatment, and the defendant offered the evidence of experts that this disease might and probably would be relieved by a surgical operation, which consisted of making a new opening in the lower part of the stomach and in the bowel below it and securing the latter to the former, so that the contents of the former might pass through this opening and through the latter. Objections were interposed to this evidence, and a colloquy arose between counsel for the railroad company and the court relative to its admissibility, in which the court ex-

pressed the opinion and ruled that it was immaterial. In the course of the colloquy, the court said, among other things:

"I think, where a person is injured by the wrongful act of another, the law only says to them you must exercise proper care in the selection of a reputable physician, and when you do that you must be governed by his advice, follow his advice and prescriptions, and it is no defense to say that had the physician followed some other course, prescribed some other remedies, results would have been different. That is no defense. The layman that is injured is not a physician; and all he has to do is to exercise proper care in selecting a reputable one and follow his directions; and, if the directions are not proper, it is the fault of the one who caused the layman to act. If that is true up to this time, why is it not true as to the future? You come in with one person on the stand who says: 'If you will take so many bottles of Peruna, that will cure you.' Another one says: 'If you will submit to a surgical operation, that will cure you.' And another one says: 'Some Pink Pills, or something of that kind, will cure you.' Has a person got to jump around and try all those different experiments that might be suggested by the other side, or may they not rely upon the advice and direction of the competent physician whom they have selected themselves, and in whom they have every confidence?"

Later in the trial all objections to this evidence were withdrawn, it was received, the court charged the jury that testimony had been introduced to show that plaintiff's future health could be restored by the surgical operation, and that, if her health could be thus restored, it was proper and competent for them to take into consideration the reasonable probability of such restoration in measuring her damages from future suffering and expense, and whether or not, considering both the rights of the plaintiff and the defendant, she should be required to submit to such an operation in view of the danger to life therefrom which had been disclosed by the evidence. No complaint is made of the charge upon this subject because it is in accord with the theory of the defendant. Nor was there any reversible error in the ruling of the court that the evidence was inadmissible, because this, if it existed, was extracted by the subsequent admission of the testimony and the favorable charge of the court. But counsel insist that the remarks of the court during the discussion of the admissibility of this evidence, especially those which placed the surgical operation in the same category with Peruna and Pink Pills, so belittled this branch of their defense that they were deprived of a fair and impartial trial. But the record does not appear to us to sustain this contention. These remarks were made upon an objection which was rightly sustained to this irrelevant question: "What surgical operations, doctor, are performed in cases of this character?" They were made, it is true, in a discussion of the general admissibility of evidence that the plaintiff's disease might be cured by a surgical operation; but they were made before that evidence had been introduced and for the legitimate purpose of informing counsel who proposed it of the reasons why it appeared to the court that it was incompetent, to the end that if possible they might overcome these reasons by more cogent ones in support of its admissibility, a task which they seem to have performed to the terror, if not to the satisfaction, of opposing counsel. Though these remarks were heard by the jury, they were not addressed to them, but to the counsel for the company. They were not intended to, and did not, instruct the jury of the weight

and effect of the testimony relative to the surgical operation which was actuallly introduced, because that evidence had not been developed. The charge of the court at the close of the trial upon this subject was their instruction and guide, and counsel concede that there was no mistake or error in that. There is a locus penitentiæ tor court as well as for counsel in the trial of a lawsuit. If, in the admission or rejection of evidence, or in the discussion of questions of law or the effect of facts in the course of the trial, it falls into errors or mistakes which it discovers before the case is submitted to the jury, it may generally reverse its rulings, correct its errors, and so charge the jury that no injury will result to the parties, and that the jury will deliberate and decide according to the law and the evidence. A careful examination of the record has convinced that the court below perfectly accomplished this result in this case. The jury were not, they could not have been, misled. They knew that the remarks of the judge in the colloquy with counsel were not for their guidance, and that his charge to them at the close of the trial was, and they undoubtedly followed the latter. Besides, there was no error of law in the ruling at the close of the colloquy, and the only mistake was in the comment of the court upon the issues of fact, all of which were subsequently submitted to the jury under proper instructions, and the opinion of the trial court upon matters of fact which are ultimately properly submitted to the jury for their decision is not reviewable error in the national courts so long as no rule of law is incorrectly stated. Lesser Cotton Co. v. St. Louis, I. M. & S. R. Co., 52 C. C. A. 95, 104, 114 Fed. 133, 142; Lovejoy v. U. S., 128 U. S. 171, 173, 9 Sup. Ct. 57, 32 L. Ed. 389; Rucker v. Wheeler, 127 U. S. 85, 93, 8 Sup. Ct. 1142, 32 L. Ed. 102; Railroad Co. v. Putnam, 118 U. S. 545, 553, 7 Sup. Ct. 1, 30 L. Ed. 257; Railroad Co. v. Vickers, 122 U. S. 360, 7 Sup. Ct. 1216, 30 L. Ed. 1161; U. S. v. Philadelphia & R. Co., 123 U. S. 113, 114, 8 Sup. Ct. 77, 31 L. Ed. 138.

Certain portions of the charge which relate exclusively to the facts of the case have been assigned as error, because the court failed to state the claim and evidence of the defendant to the effect that the plaintiff was not thrown from her seat in the car as she testified, and because the court declared that there was no material controversy as to the manner of the accident. There was no error here (1) because these portions of the instructions treated of issues of fact which were ultimately submitted to the jury for their decision, (2) because in another part of the charge the court stated that the defendant claimed that the plaintiff was neither thrown from her seat in the car nor across the car, and did not sustain the injuries she claims, and (3) because the manner of the accident was the collision of the engine with the car in which the plaintiff was riding, and about this there was no controversy.

The court instructed the jury that in assessing the damages which the plaintiff had sustained they might consider her age, the probable duration of her life, and the effect of her injury upon her ability to earn money; that, if they found that her injury was caused by the accident, and that it would destroy or decrease her ability to earn money in the future, they should award her such sum as would, in

their judgment, compensate her for the decreased or destroyed ability to earn money in the future, due allowance being made for the uncertainties and contingencies which inhere in such matters; that they should allow her (1) the amount she had incurred for medical attendance and nurse hire, (2) such amount as would reasonably compensate her for the pain and suffering she had sustained, (3) the amount she had lost on account of her inability to labor caused by the accident, (4) future nurse hire and medical attendance and compensation for future suffering. A single exception, which did not specify any reason for its being, was taken to this portion of the charge, and counsel now insist that it was erroneous, because it left the jury to assess the plaintiff's compensation for future loss of earning power by a multiplication of her daily earning capacity by the working days in her expectancy of life; but no such rule was declared or suggested by the instruction, no request was made for a rule more definite than that given by the court, and no exception was taken which subjects any part of the instruction upon the measure of damages to review. There are many declarations of law in this part of the charge which are not only correct, but unquestioned, and a general exception which specifies no ground to a charge or a portion of a charge which contains many propositions of law is futile if any of the propositions it declares are sound, because it gives no notice to the trial court of the ground upon which the exception is based, and hence no opportunity to correct an inadvertent error in its statement of the law. Price v. Pankhurst, 53 Fed. 312, 3 C. C. A. 551; Lincoln v. Claflin, 7 Wall. (U. S.) 132, 19 L. Ed. 106; Cooper v. Schlesinger, 111 U. S. 148, 4 Sup. Ct. 360, 28 L. Ed. 382.

The alleged errors in the trial of this case which were assigned by the railroad company did not exist, and the judgment below must be affirmed.

It is so ordered.