## ARIZONA & N. M. RY. CO. v. CLARK.

(Circuit Court of Appeals, Ninth Circuit. September 8, 1913. Rehearing Denied October 29, 1913.)

No. 2,259.

1. TRIAL (§ 420*)—DIRECTED VERDICT—DENIAL—WAIVER OF ERROR.

Error, if any, in a denial of defendant's motion to direct a verdict at the close of plaintiff's evidence is waived by the defendant's introduction of testimony in his own behalf, and failing to renew the motion at the close of all the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

2. MASTER AND SERVANT (§ 264*) — EVIDENCE — NEGLIGENCE OF PLAINTIFF — PRIOR MISCONDUCT.

Where, in an action for injuries to a railroad engineer, there was no claim that he did not promptly obey signals given him at the time of the accident, evidence as to prior instances within two years, when he had been negligent in the operation of his engine in failing to obey signals, was immaterial.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

3. MASTER AND SERVANT (§ 274*)—INJURIES TO SERVANT—EVIDENCE—REPUTATION FOR PRUDENCE OR RECKLESSNESS.

In an action for injuries to a railroad engineer, evidence of his general reputation for prudence or recklessness in the operation of his engine was inadmissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 939–949; Dec. Dig. § 274.*]

4. APPEAL AND ERROR (§ 683*)—RECORD—BILL OF EXCEPTIONS—RULINGS ON EVIDENCE.

The court's refusal to admit a deposition in evidence cannot be reviewed, where the deposition, while printed in the transcript, was not included in the bill of exceptions, or in any way made a part of the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1765, 1766, 3450–3455; Dec. Dig. § 683.*]

5. WITNESSES (§ 209*)—PHYSICIAN—PRIVILEGE.

Where plaintiff, a railroad engineer, after having been injured, was taken to a hospital, where the physician in attendance informed him that they had no eye specialist, and advised plaintiff to have an eye specialist examine his eye, and plaintiff permitted a specialist, obtained by the hospital physician, to examine him in order that he might obtain information as to the extent of his injury—supposing that the specialist was acting with the hospital physician, and not knowing that he was making the examination in the interest of the defendant—the specialist was disqualified to testify over plaintiff's objection, under the Arizona statute providing that a physician cannot be examined without the consent of his patient as to any communication made by the patient with reference to any physical or supposed physical disease, or any knowledge obtained by a personal examination of the patient, unless the patient has himself voluntarily testified with reference to such communications.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 771; Dec. Dig. § 209.*]

6. APPEAL AND ERROR (§ 272*)—OBJECTIONS AT TRIAL—INSTRUCTIONS—EXCEPTIONS—TIME.

Error, if any, in the giving or refusal of instructions cannot be considered on appeal, where no exceptions were taken thereto while the jury

was at the bar, though the record recited that before the jury retired the court granted permission to defendant to embody in its bill of exceptions, if it should tender one, its objections to the court's instructions more at length and in detail, and that, after the jury, having been instructed, had retired, certain exceptions were taken by counsel for the respective parties.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1611–1619; Dec. Dig. § 272.*]

7. INTEREST (§ 39*)—TIME—INJURIES—DATE OF JUDGMENT.
   In an action for personal injuries, it is proper for the court to allow interest on the verdict from the date of the judgment.

   [Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 83–89; Dec. Dig. § 39.*]

8. APPEAL AND ERROR (§ 1004*)—REVIEW—EXCESSIVE VERDICT.
   The amount of damages awarded to plaintiff in an action for injuries is not open for review on writ of error.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

9. MASTER AND SERVANT (§ 87½, New, vol. 16 Key-No. Series)—INJURIES TO SERVANT—WORKMEN'S COMPENSATION ACT—APPLICATION.
   Workmen's Compensation Act Ariz. June 8, 1912 (Laws 1912 [Sp. Sess.] c. 14), was inapplicable to an action for injuries to a servant which occurred prior to the passage of the act.

In Error to the District Court of the United State for the District of Arizona; Richard E. Sloan, Judge.

Action by Thomas P. Clark against the Arizona & New Mexico Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. C. McFarland, of Clifton, Ariz., for plaintiff in error.

L. Kearney, of Clifton, Ariz., and W. M. Seabury, of Phœnix, Ariz., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The complaint in this action, which is for damages for personal injuries alleged to have been received by the plaintiff below, defendant in error here, through the alleged negligence of the defendant to the action, was twice amended; the sufficiency of that upon which the case was tried being questioned by two demurrers, one general, and the other special, and by two motions, in support of each of which are cited in the brief here filed for the plaintiff in error a large number of authorities. It is readily conceded that the complaint might well have been more concise, logical, and clear; but we are of the opinion that its manifest defects are not fatal.

In addition to the jurisdictional facts, it alleges, in effect, that at the times in question the defendant to the action was the owner of and engaged in operating a railroad from Clifton, Ariz., to Hachita, N. M. (then territories, but since become states), carrying both passengers and freight for hire over its road between the points mentioned; that at Clifton it owned and maintained as a part of its road a large number of tracks, turnouts, and switches, for the storage of cars, and for the making up of trains, which tracks and switches extended from

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the company's depot in Clifton southerly about a quarter of a mile to where the company's bridge crosses the San Francisco river; that about 800 feet north of the bridge one of the company's switches left its main track and extended a distance of about one-half mile to the smelter of the Shannon Copper Company, the grade of which switch is so steep that the engine upon which the plaintiff was engineer could haul only four of the company's cars at any one trip; that the company's main line from the bridge to the smelter switch is downgrade to such an extent that cars placed thereon, without brakes set, or without being well chocked, would not remain still, but would run to and past the switch; that at the time of the accident in question, to wit, March 15, 1911, the company had in its yards at Clifton 12 freight cars, brought from without the then territory of Arizona over its road, which were loaded with coke and merchandise and consigned to the Shannon Copper Company; that the plaintiff was then engaged as engineer of the company's switch engine used by it in moving such interstate commerce; that in moving the 12 freight cars mentioned the company, furnished the plaintiff with a crew of helpers consisting of a fireman, the yardmaster, the foreman, and two brakemen, and that, when the plaintiff and the said crew began the removal of the 12 cars, eight of them were brought down the main track to a point about 450 feet north of the bridge and 200 feet south of the smelter switch, where four of the cars were uncoupled and left on the main track, and four of them were coupled to the switch engine; that, when the four cars were uncoupled and left at the point about 200 feet south of the switch, it became and was the duty of the three helpers left in charge of them to set the brakes thereon and securely chock and fasten them, so that they would not run down the track to the point where the plaintiff was engaged in hauling the other four of the cars onto the switch, which duties the said helpers wholly failed to perform, on account of which negligence the four cars so left standing began to move and run down the track towards the switch, which the plaintiff was entering with his engine and the four cars attached thereto, when the said foreman and one of the brakemen carelessly and wrongfully signalled the plaintiff to stop his engine, which he did within eight seconds, resulting in the tender of the engine cab in which the plaintiff was at the time sitting being struck with great force by the four cars that had been left on the main track, resulting in the loss of one of the plaintiff's eyes and other serious bodily injuries to him. The complaint also alleged that the company's roadbed was defective and unsafe; that the brakes on the said cars and their coupling apparatus were out of repair and unsafe; that there were not enough brakemen furnished by the company to manage the cars, of all of which the company was well aware, and that the cars were negligently and carelessly managed and operated; and that the negligence alleged was the direct and proximate cause of the plaintiff's injury.

In its answer the defendant put in issue all the allegations in respect to its negligence, and alleged that the plaintiff's injuries were caused by his own negligence and want of care, and also set up that the in-

juries received by him were the result wholly of the ordinary risks of his employment, which risks were known to him or would have been known to him by the use of ordinary care.

[1] At the trial, upon the conclusion of the plaintiff's evidence, the defendant moved the court for a directed verdict in its favor, the denial of which motion constitutes one of the assignments of error. A conclusive answer to the point is that the defendant proceeded to introduce testimony in its own behalf upon the issues in the case, and did not renew the motion upon the conclusion of all of the evidence. Sigafus v. Porter, 179 U. S. 121, 21 Sup. Ct. 34, 45 L. Ed. 113; Columbia, etc., v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405; Robertson v. Perkins, 129 U. S. 233, 9 Sup. Ct. 279, 32 L. Ed. 686; Grand Trunk Railway v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266; American Smelting Co. v. Karapa, 173 Fed. 607, 97 C. C. A. 517, and cases there cited.

The ruling of the trial court refusing to permit the defendant to introduce the testimony of two witnesses—Kelly and Kline—is also assigned as error.

[2] In respect to Kelly, the record shows that the defendant asked the witness whether the plaintiff was a careful or negligent man in the operation of his engine in switching cars, and whether he knew of any instances prior to the accident and within the space of two years where he was negligent in the operation of his engine in respect to obeying signals, and offered to show by the witness that the plaintiff for two years previous to the accident in question "was habitually careless and negligent in obeying signals given him while operating his engine in switching cars in the yards of the defendant"; and of the witness Kline the defendant asked the question, "Do you know his (plaintiff's) general reputation as to being a safe and conservative engineer, or as to his reputation of being a reckless engineer in the operation of his engine?" objections to all of which the court sustained, to which rulings the defendant excepted.

We think the rulings right. So far as concerns the signals, the evidence showed that the plaintiff strictly obeyed the signals given him in the instance in question by stopping his engine within eight seconds after receiving it, resulting in the injuries complained of, and we find nothing in the evidence to the contrary. Whether he failed to obey some other signal at some other time was manifestly immaterial.

[3] In 29 Cyc. 619, it is said:

"By the weight of authority evidence of plaintiff's habits and usual conduct as to a particular act, or of his character for prudence or recklessness, is not admissible on the question of contributory negligence"—citing numerous cases.

See, also, Id. 610.

In 21 Am. & Eng. Encyc. of Law (2d Ed.) 518, it is said:

"It is a general rule that in an action for negligence evidence is not admissible of other independent and disconnected acts of negligence as going to show negligence in the case at bar. It is fundamental, indeed, that evidence of any alleged negligent act or omission which could not by any possibility have contributed to the plaintiff's injuries should not be received. But where, though an act or omission may in a sense be collateral, yet from it an in-

ference of fact may be drawn bearing upon the particular act or omission alleged to be negligent, and from which the injuries resulted, evidence thereof is not incompetent. And so where the injuries complained of resulted from the combined or concurrent effect of the acts of several parties, evidence of the negligent act of each, performed independently of the others, is admissible."

See, also, Missouri, K. & T. Railway Co. v. Johnson, 92 Tex. 380, 48 S. W. 568; 6 Thompson on Negligence, § 7792.

[4] The refusal of the court below to admit in evidence the deposition of the plaintiff's physician—Dr. Dietrich—is assigned as error. That deposition, while printed in the transcript, is not included in the bill of exceptions, or in any way made a part of the record of the case, and is not, therefore, for our consideration. In Russell v. Ely, 2 Black, 575, 580 (17 L. Ed. 258), the Supreme Court said:

"What purports to be the entire deposition of Baker is sent up by the clerk of the District Court, and is printed in the record before us, and if properly before us might sustain the exception; but this deposition is not incorporated in the bill of exceptions, nor so referred to in it as to be made a part of the record of the case. It is only a useless incumbrance of the transcript, and an expense to the litigating parties."

That case was cited with approval by the same court in United States v. Copper Queen Mining Co., 185 U. S. 495, 498, 22 Sup. Ct. 761, 46 L. Ed. 1008. See, also, Alaska Commercial Co. v. Dinkelspiel, 126 Fed. 164, 61 C. C. A. 108; Boatmen's Bank v. Trower Bros. Co., 181 Fed. 809, 104 C. C. A. 314; Star Co. v. Madden, 188 Fed. 910, 110 C. C. A. 652.

[5] The defendant company also sought to introduce the testimony of Dr. Stark, an oculist, who was called to examine the plaintiff's eyes, and upon objections of counsel for the latter the court excluded his testimony upon the ground that such examination and the attending communications between the physician and patient were privileged, to which ruling the defendant excepted, and here assigns it as error.

A statute of Arizona provides:

"A physician or surgeon cannot be examined without the consent of his patient as to any communication made by his patient with reference to any physical or supposed physical disease, or any knowledge obtained by personal examination of such patient; Provided, that if a person offer himself as a witness and voluntarily testify with reference to such communications, that is to be deemed a consent to the examination of such physician or attorney."

Such statutes are designed to protect the patient, and should be liberally construed to that end. Underhill on Crim. Evid. (2d Ed.) § 179, p. 341; 23 Am. & Eng. Encyc. of Law (2d Ed.) pp. 83, 84, 85, and numerous cases there cited.

It is contended on behalf of the plaintiff in error that "Dr. Stark was employed and paid by the defendant company for the purpose of being advised of the condition of the patient's eye at the date of examination"; and such appears from the evidence to have been the fact. But the trial court found that the plaintiff did not know the real purpose of the calling in of Dr. Stark, but believed that the latter's services were engaged for his, plaintiff's benefit, and as his physician in connection with Dr. Dietrich. The record contains a

large amount of testimony on that point which is more or less conflicting—there being some inconsistency in the testimony of the plaintiff himself, as will be seen from this excerpt:

"Q. Tell us what the hospital was where you were examined. A. They call it the A. O. Hospital.

"Q. Is that, or is it not, the hospital in which injured employés of the defendant are examined? A. Yes, sir.

"Q. Did you know that to be the fact at the time of your examination? A. Yes, sir.

"Q. Who was it that requested you to be examined, if any one, by Dr. Stark? A. I think it was Dr. Dietrich.

"Q. You think Dr. Dietrich suggested it? A. Yes, sir; he told me when he would be there.

"Q. Was anything said to you with reference to the purpose for which that examination was requested or required? A. To examine my eye.

"Q. Dr. Dietrich was then in attendance upon you as your physician? A. I was still under his charge.

"Q. Now, did you think this examination by Dr. Stark was to be made for the benefit of the company or for your benefit? A. I don't know.

"Q. You don't know for whose benefit it was to be made? A. For my benefit, I suppose.

"Q. Is that what you understood? A. Yes.

"Q. Did you, or did you not, believe that Dr. Stark was in consultation with Dr. Dietrich, your attending physician? A. Yes, sir.

"Mr. Kibbey: You are leading him right along.

"The Court: I think the communication is privileged—I will sustain the objection.

"By Mr. Kibbey: Q. You say Dr. Dietrich was there? A. He might have been in and out.

"Q. As a matter of fact, he wasn't in town, was he? A. Yes, sir; I think so.

"Q. You had a conversation with Dr. Stark, didn't you? A. Yes, sir.

"Q. In the course of that conversation, did you state to Dr. Stark that you found on the third day after the injury that you had lost the vision of your eye?

"Mr. Seabury: We object to the question.

"The Court: I sustain the objection.

"By Mr. Kibbey: Q. Didn't you state to Dr. Stark that you had not had any injury to your head—received any injury to your head in that accident?

"Mr. Seabury: We make the same objection.

"The Court: Same ruling.

"By Mr. Kibbey: Q. Had you and the company had any talk prior to that time with reference to your condition—your ability to go to work, or anything of that kind?

"Mr. Seabury: We object.

"The Court: Is this a general examination—isn't it as to this matter of the competency of this doctor?

"Mr. Kibbey: I am trying to get to the matter of the competency of this doctor.

"Mr. Seabury: The question is, Did you have any talk with the company? I don't see what—

"The Court: You may answer.

"The Witness: No, sir.

"By Mr. Kibbey: Q. You had not had any talk with any of them up to that time? A. No, sir.

"Q. Didn't you know that the company desired for its own information to have an independent doctor make an examination of your eye? A. I told Dr. Dietrich about it, and he made the appointment with the doctor, I suppose.

"Q. Didn't Dr. Dietrich tell you the company wanted an examination made for their information as to your condition, and didn't you so understand it?

"Mr. Kearney: We object to that as a privileged communication.

"The Court: I overrule the objection.

"The Witness: I told Dr. Dietrich about it, and he tried to examine it himself, and then he made the date with Dr. Stark a few days afterwards.

"Q. Didn't you understand it was for the information of the company to find out what the condition of your eye was? A. I supposed that was the object—very likely.

"Q. You understood when the examination was made that it was for the purpose of getting information for the company? A. Yes.

"Mr. Kibbey: Now, we think it is competent.

"The Court: That answer is contradictory to the other.

"Mr. Seabury: Absolutely, your honor.

"Mr. Kibbey: Yes, it is.

"Mr. Seabury: However, we also claim that his direct examination shows much more facts and circumstances in connection with the matter than the mere answer to that one question, and I think from the witness' testimony, both under cross and direct examination, that it is perfectly clear that he thought Dr. Dietrich called Dr. Stark as a consulting physician.

"Mr. Kibbey: I think it is quite obvious to the contrary.

"Mr. Seabury: We differ in regard to the inferences to be drawn from the evidence. I don't see how the witness can really know—

"The Court: I will put a question.

"To the witness: Q. What did you understand was the object of this examination of your eye? A. To know whether it was injured or not.

"Q. What difference did it make whether it was injured or not, in your judgment? A. It would make a whole lot.

"Q. In what way? A. From good sight to blindness—I wanted that information.

"Q. Who wanted it? A. I did.

"Q. You wanted it? A. I wanted to know the condition of it. When I reported to Dr. Dietrich, he said they had no oculist, and that they would get one, and then I left the thing to Dr. Dietrich, and when they made the appointment I appeared there.

"Mr. Seabury: We think that makes it too clear, your honor.

"The Court: I think so."

The real purpose, as practically conceded by counsel for the plaintiff in error, of Dr. Stark's examination of the plaintiff being to obtain information to be used against any claim on his part for damages, good faith required that the plaintiff should have been frankly told that Dr. Stark came as the representative of the company, and not left to infer that he came as his own physician, as he very well might from the statement of Dr. Dietrich, according to the plaintiff's testimony, that he needed an oculist to consult with. Munz v. Salt Lake Railway Co., 25 Utah, 220, 70 Pac. 852; 1 Elliott on Evidence, § 634, p. 741; Underhill on Crim. Evid. (2d Ed.) § 179. See, also, Union Pacific R. R. Co. v. Thomas, 152 Fed. 365, 81 C. C. A. 491, and cases there cited.

We therefore think the court below was right in excluding the testimony of the witness in question.

[6] There are various assignments of error in respect to giving and refusal to give certain instructions to the jury which we are precluded from considering for the reason that exceptions thereto were not seasonably taken. The record shows that, after the jury had been instructed and retired in charge of the bailiffs, certain exceptions were taken by counsel for the respective parties, and the record shows that:

"Before the jury retired to consider of their verdict that the court granted permission to the defendant to embody in its bill of exceptions, if it should

tender one, its objections to the instructions of the court to the jury more at length and in detail."

That none of such exceptions can be here considered was distinctly decided by this court in the case of Western Union Tel. Co. v. Baker, 85 Fed. 690, 29 C. C. A. 392, and has been so held by many other federal courts. See the numerous cases cited in that last mentioned, and in Star Co. v. Madden, 188 Fed. 910, 110 C. C. A. 652, where is set out the rule laid down by the Supreme Court in Phelps v. Mayer, 15 How. 161, 14 L. Ed. 643, as follows:

"It has been repeatedly decided by this court that it must appear by the transcript, not only that the instructions were given or refused at the trial, but also that the party who complains of them excepted to them while the jury were at the bar. The statute of Westminster II, which provides for the proceeding by exception, requires, in explicit terms, that this should be done, and if it is not done, the charge of the court, or its refusal to charge as requested, form no part of the record, and cannot be carried before the appellate court by writ of error. It need not be drawn out in form and signed before the jury retire; but it must be taken in open court, and must appear, by the certificate of the judge who authenticates it, to have been so taken. Nor is this a mere formal or technical provision. It was introduced and is adhered to for purposes of justice."

[7] There remains to consider only the objections to the amount of the judgment. The plaintiff in error contends that the judgment of the court below is erroneous in that by it the plaintiff is allowed interest on the amount of the verdict from the date of the judgment, and cites in support of the point the decision of the Court of Appeals of the Fifth Circuit in the case of White et al. v. United States, 202 Fed. 501, which decision does not at all support the contention. That was an action for damages for the cutting and conversion of timber from the lands of the government, and in which the jury by its verdict allowed interest from the date of the conversion to the date of the trial of the case—a period of 13 years. The Court of Appeals, in disposing of the case, said:

"The oral charge of the court is set out in the bill of exceptions in its entirety, and contains no reference to the question of interest. Interest in actions of tort in the federal courts is not allowable as a matter of right; but its allowance, as part of plaintiff's damages, is discretionary with the jury. Eddy v. Lafayette, 163 U. S. 458–467, 16 Sup. Ct. 1082, 41 L. Ed. 225.

"The jury were not instructed by the court below that they possessed any such discretion, and probably included interest in their verdict upon the idea that the plaintiff was entitled to it as a matter of right, and not of discretion.

"It is true the plaintiffs in error do not assign error because of this omission of the court; but a plain error may be noticed by us, and in the absence of any assignment. In view of the long and unexplained delay on the part of the government in instituting the suit, we feel that a proper exercise of discretion by the jury would have denied the plaintiff interest."

The case of Eddy v. Lafayette, 163 U. S., there cited, is, however, authority for the approval of the judgment of the court below in the present case in allowing interest from the date of the judgment. See pages 461–467 of 163 U. S., 16 Sup. Ct. 1082, 41 L. Ed. 225.

[8] Under the well-established rule prevailing in the federal courts, the question of the amount of damages awarded the plaintiff is not for our consideration. Texas & Pacific Railway Co. v. Behymer,

189 U. S. 469, 23 Sup. Ct. 622, 47 L. Ed. 905; Western Gas Construction Co. v. Danner, 97 Fed. 883, 890, 38 C. C. A. 528.

[9] The statute of Arizona entitled "An act securing compensation for injuries to workmen and their dependents received while engaged in dangerous and hazardous service, and providing remedies therefor," approved June 8, 1912 (Session Laws of Arizona 1912, p. 23 [Sp. Sess.]), and relied upon by counsel for the plaintiff in error, having been passed long subsequent to plaintiff's injuries, has no application to the case.

It results from what has been said that the judgment of the court below must be, and it is accordingly, affirmed.