## ARMOUR & CO. v. KOLLMEYER.

(Circuit Court of Appeals, Eighth Circuit. April 29, 1908.)

No. 2,694.

1. CONTINUANCE—DISCRETION—ABUSE OF DISCRETION ONLY REVIEWABLE.

The granting or refusing of a motion for a continuance is intrusted to the judicial discretion of the trial court, and it is an abuse of that discretion only that is fatal error.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Continuance, §§ 17, 18.]

2. SAME—CONTINUANCE OR ADMISSION OF STATEMENT OF TESTIMONY OF ABSENT WITNESS CONDITIONED BY DILIGENCE TO PROCURE IT—FACTS.

Proof of due diligence to procure the attendance or the testimony of an absent witness, and of facts which present reasonable grounds to believe that his attendance or evidence will be secured at the next term, is essential to the right of the moving party to a continuance or an admission of the statement of the witness' testimony as evidence.

Proof of reasonable, but futile, diligence to procure the attendance or testimony of a witness from March 20, 1906, until May 7, 1906, and from April 29, 1907, until May 3, 1907, without evidence of diligence between May 7, 1906, and April 29, 1907, is insufficient.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Continuance, §§ 74–93.]

3. DAMAGES—PERSONAL INJURIES—PROXIMATE CAUSE—IMPOSSIBILITY OF ANTICIPATION OF EXTENT OF INJURY NO BAR TO RECOVERY OF COMPENSATION FOR PROBABLE INJURY.

There was substantial evidence that the collision of two one-horse teams, induced by the negligence of defendant's driver, caused a fright of the plaintiff that produced an impairment of nervous power, weakness and suffering.

Held, inasmuch as the natural and probable effect of such a collision, which a person of reasonable prudence would have anticipated, was some fright, shock, and injury, the fact that the extent of it was indeterminate and impossible of anticipation was no bar to a recovery of compensation for the actual pecuniary loss caused by the negligence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 100.]

4. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—CURING ERROR BY SUBSEQUENT INSTRUCTION—RULE—EXCEPTION.

The general rule is that, if inadmissible evidence has been received during a trial, the error of its admission is cured by its subsequent withdrawal before the trial closes and by an instruction to the jury to disregard it.

There is this exception to the rule: Where the evidence thus admitted is so impressive that in the opinion of the appellate court its effect is not removed from the minds of the jury by its subsequent withdrawal, or by an instruction of the court to disregard it, the judgment will be reversed on account of its admission, and a new trial will be granted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4178–4184.]

**5. Trial—Refusal of Instruction Containing a Sound and an Unsound Proposition No Error.**

Where a request for an instruction contains two or more propositions of law, one of which is unsound, there is no error in a refusal to grant it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 660.]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

George B. Webster, for plaintiff in error.

W. R. Gentry (W. L. Bohnenkamp, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. This writ challenges a judgment of $4,000 against Armour & Co., a corporation, for damages on account of personal injuries inflicted on Kollmeyer, the plaintiff below, by the alleged negligence of one of its drivers. Kollmeyer alleged in his pleading that, as he was driving in a one-horse spring wagon slowly south along the west side of Fourteenth street in St. Louis, Mo., the defendant's driver drove its one-horse meat wagon rapidly into collision with his wagon, raised one side of it so that there was reason to believe, and the plaintiff did believe, that there was imminent danger that it would be overturned, and would throw him into the street and injure him; that he thereupon jumped to the street, where he struck with great force, and by reason of the force and shock of the collision and of striking upon the street he was greatly shocked and injured. The defendant answered that it was guilty of no negligence, and that, if the plaintiff sustained any injury, it was caused by his negligence. There was substantial evidence of these facts in support of the verdict, although some of them were not established by uncontradicted evidence. Fourteenth street extends from north to south, and Biddle street crosses it at right angles. The plaintiff was a contractor, and he was walking his horse, attached to a light spring wagon loaded with a dozen sticks of lumber, 2x4, 16 feet long, south along the west side of Fourteenth street, near its intersection with Biddle street, with the intention to go east on Biddle street. The defendant's driver was driving rapidly a horse attached to a wagon loaded with 1,200 pounds of meat east along Biddle street behind a stake wagon, with the intention to go north on Fourteenth street. There is a descending grade on Biddle street from the west to its intersection of Fourteenth street. There was a shed 12 feet high, which extended along the west side of Fourteenth street north from Biddle street, and obstructed the view of the former street from Biddle street west of Fourteenth street. As the stake wagon arrived at the intersection of the line of the west curb of Fourteenth street with Biddle street, the defendant's driver guided his horse along the north side of this wagon around the corner into Biddle street, so that one of the shafts of the wagon struck the west side of the plaintiff's spring wagon, raised it a foot or 18 inches, the plaintiff slid toward the east, was afraid his wagon would be overturned

and, that the defendant's team would run over him, and he jumped to the ground, a distance of about 4 feet. Before this collision he had been a healthy man, and had earned $6 per day. The shock of the collision and of his alighting upon the street produced traumatic neurasthenia, reduced his earning capacity about 50 per cent., caused him much suffering, considerable expense for medicines and medical service, and rendered it doubtful whether or not he would ever regain his former good health.

The case was called for trial on May 1, 1907, and the court denied a motion by the defendant to continue it upon the ground that its counsel was engaged in the trial of another case in another court. But that ruling will not be discussed, because the defendant was not prejudiced thereby, as its counsel was present throughout the trial, which was not commenced until May 3, 1907.

On the latter day the defendant made another motion to continue the case upon the ground that one Rombaugh, an important witness, was absent and could not be found. The defendant set forth in affidavits material testimony which the absent witness would give, if present, that a subpœna had been issued for him, and that diligent search and endeavor had been made to find him from April 29, 1907, until May 3, 1907. The fact also appeared, however, from evidence presented to the court, that the defendant had caused diligent search to be made for this witness from March 20, 1906, until May 7, 1906, had during that time caused subpœna to be issued for him and to be delivered to one Trimmer for service upon him, but that the witness had then moved from his former address and could not be found at that time. One of the errors specified is that the court below denied the motion for continuance based upon this showing, without requiring the plaintiff to admit that the witness would testify as stated in the moving affidavits. But the granting or refusing of a motion for continuance is intrusted to the judicial discretion of the trial court, and it is only when the record discloses an abuse of that discretion that an appellate court will reverse a judgment on account of its exercise. No such abuse appears from this record.

It is only when, in addition to the other requirements of section 685 of the Revised Statutes of Missouri of 1899, the moving party states facts in his affidavits which show the use of diligence to obtain the witness or his testimony, and facts which show reasonable grounds for belief that his attendance or his evidence will be procured at the next term, that a court is required by the statute and the practice to grant a motion for continuance, unless the opposing party will admit that the witness would testify as stated by the moving party, and that statement is received in evidence as his testimony. Rev. St. Mo. 1899, § 687. The defendant failed to comply with each of these requirements. The facts that it searched in vain for the absent witness from March 20, 1906, until May 7, 1906, and from April 29, 1907, until May 3, 1907, without any proof or statement that it made any effort either to find him or to serve him with a subpœna, or to take his deposition between May 7, 1906, and April 29, 1907, did not evidence due diligence to obtain him or his testimony, and did not fur-

nish reasonable grounds to believe that his attendance or his testimony would be procured at the next term of the court.

Counsel complain because the trial court refused to grant their request for a peremptory instruction in favor of the defendant. The evidence was conclusive that no break of any bone, no strain or tear of any muscle, no abrasion of the skin, and no external appearance upon the person of the plaintiff of any injury resulted from the collision or the jump. But there was substantial evidence that the collision and the jump caused fright and neurasthenia and a reduction of nervous power, which impaired the plaintiff's earning capacity and resulted in undue fatigue on slight exertion, in pain, in expense, and in a condition which rendered it doubtful whether or not he would ever recover his former health. There was substantial evidence that the fright was the real cause of the neurasthenia and its accompanying ills, and that it was impossible to separate the injury caused by the jump and by the alighting upon the street from the injury caused by the collision and the accident.

Counsel argue that the defendant was not liable for any damages in this case:

(1) Because the serious injury caused by the fright was not the natural or probable effect of the gentle collision which the defendant caused, and the defendant could not have anticipated such an injury. But the natural and probable result, the effect which a person of reasonable foresight would have anticipated from carelessly driving a horse and wagon loaded with 1,200 pounds of meat against the side of a light spring wagon loaded with pieces of 2x4's with such force as to raise one side of it a foot or 18 inches from the ground, was some fear of injury, some fright, some shock of the nervous system of the driver of the spring wagon, and its resulting injury, and the fact that the extent of the resulting injury was in its nature indeterminate and impossible of anticipation constituted no bar to a recovery of compensation for the actual pecuniary loss caused by the negligent act.

(2) Because the sole cause of the collision and the injury was fast driving, and the court below charged, and counsel insists, that fast driving is not of itself negligence; but, conceding the latter proposition, the conclusion does not follow that fast driving is never negligence under any circumstances. It may be the exercise of reasonable care to drive rapidly in the daytime along the public street, when the driver can see that the course he intends to pursue is unobstructed, and all other persons on the street can see where and in what way the driver intends to go; but it is not the exercise of reasonable care to drive rapidly along a public street in darkness, at a time when the driver knows that many other persons will probably be moving upon and across the street, or to drive so rapidly sharply around the corner of two public streets of a city that the driver cannot prevent collision with teams or pedestrians that are lawfully using the street upon which he enters. The defendant's driver was taking his team along Biddle street at a rapid gait. He knew that he intended to take it into Fourteenth street, and the plaintiff was ignorant of that purpose. He knew that his wagon was loaded, and that he could not stop his rapidly moving horse as quickly as he could have done if it had been with-

161 F.—6

out a load. He knew that the shed on the corner obstructed his vision, so that he could not see from Biddle street what there was upon Fourteenth around the corner. In this state of the case the law imposed upon him the duty to exercise reasonable care to take his team into Fourteenth street at such a speed and at such a place that he could avoid a collision with and injury to all who were lawfully using the latter street. He might have exercised the requisite degree of care by driving along on Biddle street until he could see up Fourteenth street, and by then steering clear of plaintiff and others upon it. He might have exercised due care by sharply rounding the first corner with his team under such control that he could prevent it from colliding with unseen vehicles upon Fourteenth street. He pursued neither course. He blindly drove his horse so rapidly and sharply around the first corner that he could not avoid a collision with the plaintiff, who was driving slowly down Fourteenth street on the right side of the street, and he thereby failed to exercise reasonable care, although fast driving of itself may not be negligence.

(3) Because there was a fatal variance between the plaintiff's pleading and his proof, in that he counted upon physical injuries resulting from his jump and his alighting upon the street, and his only proof was of mental injuries caused by his fright. But the complaint contained averments that the collision was caused by the negligence of the defendant's driver; that it raised one side of the plaintiff's wagon, and caused him to believe, and would have caused a person of reasonable prudence in his situation to believe, that there was imminent danger that he would be thrown out and would be caused great bodily injury; that to escape such injury he jumped; that he struck the street "with great force and violence, and by reason of the force and shock of the collision of said wagons, and by reason of striking the street with such force and violence, plaintiff was greatly shocked and injured, and was injured in his back and spine, and his whole nervous system was permanently shocked, and he was made sick, sore, and weak, and caused to suffer great pain in his arms and limbs, and suffered great loss of sleep and severe spells of nervousness." The plaintiff sued for both the physical injuries caused by his jump and the mental injuries caused by the shock and consequent fright that the collision and the jump produced, and no more conclusive demonstration of that fact and no more complete answer to the defendant's claim of variance between the pleading and the proof could be made than the above quotation from the complaint and the statement of the evidence which has been made.

It is assigned as error that the court permitted the plaintiff and one of his witnesses to testify that the collision caused him to lose sexual power. In answer to a question by his counsel the plaintiff testified without objection that since the accident his sexual power was pretty nearly all gone. Defendant's counsel immediately moved to strike out the answer, because "not a matter of damages and not pleaded," and the court denied the motion. One of the plaintiff's witnesses, a physician, subsequently testified that the loss of sexual power is one of the symptoms of neurasthenia, and that upon a rational examination he discovered that was verified by the conditions in the

present case. At the close of the direct examination of the latter witness the plaintiff asked to amend his complaint by interlining an averment of the impairment of sexual power, and the court refused permission. The plaintiff then moved to strike out the evidence upon that subject, the court granted the motion, and the defendant excepted. At the close of the trial the court instructed the jury to disregard any evidence tending to show the loss by the plaintiff of sexual power. Conceding, but not deciding, that the evidence stricken out was inadmissible, how are the rulings which have been recited reversible error? The general rule is that, if inadmissible evidence has been received during a trial, the error of its admission is cured by its subsequent withdrawal before the trial closes, or by an instruction to the jury to disregard it. Pennsylvania Co. v. Roy, 102 U. S. 451, 26 L. Ed. 141; Specht v. Howard, 16 Wall. 564, 21 L. Ed. 348; Union Pacific R. Co. v. Thomas, 152 Fed. 365, 371, 81 C. C. A. 491.

There is this exception to the rule. Where the evidence thus admitted is so impressive that in the opinion of the appellate court its effect is not removed from the minds of the jury by its subsequent withdrawal, or by the instruction of the court to disregard it, the judgment will be reversed on account of its erroneous admission, and a new trial will be granted. Waldron v. Waldron, 156 U. S. 361, 381, 383, 15 Sup. Ct. 383, 39 L. Ed. 453; Throckmorton v. Holt, 180 U. S. 552, 567, 21 Sup. Ct. 474, 45 L. Ed. 663. There are two reasons why there was no reversible error in the rulings of the court under consideration:

In the first place, the fact of the plaintiff's impairment of power was proved, and was lodged in the minds of the jurors, in the absence of any error of the court. It was put in evidence in answer to a question which clearly disclosed the subject-matter, in the absence of any objection by the defendant. Thus the evil effect upon the minds of the jurors of the proof of the fact was wrought without any error of the court. It is true that immediately after the question was answered counsel for the defendant moved to strike the answer out, and the court denied the motion; but after another witness had testified to the fact, and before the case went to the jury, and before the plaintiff rested his case, the court struck out all evidence on this subject and instructed the jury to disregard it. The error of the court, if any, was not that it received the evidence, but that after the evidence had been received without objection it did not strike it out as soon as it should have done.

In the second place, the case falls under the rule, rather than under the exception. The objectionable evidence was withdrawn by the plaintiff himself, and the court told the jury to disregard it before the plaintiff rested. It was not before the jury when the case was argued to them, and at the close of the argument the court again instructed them to disregard it. The other evidence of injury in the case was sufficient to sustain the verdict for the amount of damages which the jury found. The jury could not have misunderstood the repeated instruction of the court to disregard the testimony here challenged, and the presumption is that they faithfully discharged their duty. Inasmuch as the fact challenged was lodged in the minds of the jurors in the absence of error, and the counsel who introduced it and the court

respectively requested and instructed the jury to disregard it, their erroneous delay of a few hours during the trial in the discharge of this duty was cured, and the case fell under the general rule, and not under the exception.

It is specified as error that the court refused to give to the jury the following instruction, which was requested by the defendant:

"The court further instructs the jury that the fact that the driver of defendant's wagon may have been on the left side of the street when the collision is alleged to have occurred is no evidence in itself of negligence on the part of such driver. The 'law of the road,' so called, that a driver must keep to the right, does not apply when one is crossing or turning into the street, or where the parties are driving in opposite directions and about to meet at the intersection of two streets. A disregard of this rule will not render the defendant liable in case of collision, if the plaintiff himself could have avoided the collision by the exercise of ordinary care on his part; and the mere fact that he was driving slowly at the time when the collision is said to have occurred (if such fact of slow driving has been proven) is no proof in itself that the plaintiff was in the exercise of due care upon his part."

Conceding, but not deciding, that this instruction correctly states the law of the road, its last clause was unsound, inapplicable to the facts of this case, and misleading. The plaintiff was approaching the intersection of two streets. He intended to take his team, which he was driving slowly along on the right side of Fourteenth street, east on Biddle street. He knew or anticipated that there were, or would be, other teams on the latter street. The requested instruction was that the fact that he was driving slowly at the time when the collision occurred was no proof in itself that he was exercising due care. His slow driving may not have been conclusive proof of due care; but was it not some proof, some evidence, of it? Even if the fact were conceded that slow driving is in itself no proof of reasonable care, are there not times when, places where, and circumstances under which, it is some proof, some evidence, of due care? The instruction is limited to the time, and hence to the place and the circumstances, of the collision. Was not the fact that, as the plaintiff was approaching on the right side of his street, and was close to the crossing of Fourteenth street by Biddle street, into which he intended to turn, he was driving his horse so slowly that he could control his speed and prevent his team from running against or upon another, some proof, some evidence, of the exercise of due care on his part? These questions must be answered in the affirmative, and for that reason, and because the last clause of the requested instruction suggests that proof of the plaintiff's reasonable care was essential to his case, when it was not, and the burden was on the defendant to prove his causal negligence, if any, this part of the instruction did not state the rule of law applicable to this case, and there was no error in the refusal of the court to give the entire instruction.

Where a request for an instruction contains two or more propositions of law, one of which is unsound, there is no error in a refusal to grant it. United States v. Hough, 103 U. S. 71, 72, 73, 26 L. Ed. 305; Chicago Great Western Ry. Co. v. Roddy, 65 C. C. A. 470, 476, 131 Fed. 712, 718; Monarch Cycle Mfg. Co. v. Royer Wheel Co., 44 C. C. A. 523, 526, 105 Fed. 324, 328.

There were other specifications of error; but they were leveled at refusals to grant requests for instructions which, so far as they were warranted by the law, were given in legal effect in the charge of the court, or at rulings which were not erroneous for reasons which have been given in the discussion of the specific objections which have been reviewed.

There was no error of law in the trial of this case, and the judgment below must be affirmed.

It is so ordered.