## PITTMAN v. UNITED STATES.
### No. 8814.

Circuit Court of Appeals, Eighth Circuit.
July 30, 1930.

L. L. Collins and Harold Pierce, both of Springfield, Mo., for appellant.

Wm. L. Vandeventer, U. S. Atty., and Chet A. Keyes, Asst. U. S. Atty., both of Kansas City, Mo.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

Appellant was tried and convicted on both counts of an information which charged, in the first count, an unlawful sale of intoxicating liquor, and, in the second, the maintenance of a common nuisance at a certain building used as a hotel in Taney county, Mo., by conducting a place where whisky unlawfully was possessed, kept, and sold in violation of the National Prohibition Act (27 USCA § 1 et seq.).

The evidence introduced by the government was that one R. R. Lashbrook, who was a federal prohibition agent working under the deputy prohibition administrator of the Western district of Missouri, went about February 10, 1929, with an informer named Berry Jones, to the building described in the information located at Branson, Mo. Lashbrook was introduced to appellant under the name of George Lewis. The informer asked appellant "if he had any more of that good whisky." Appellant asked how much was wanted, and Lashbrook said a quart ought to be enough. Appellant filled two pint bottles and handed them to Lashbrook, who gave him three $1 bills. These bottles were examined at Kansas City, and were found to contain whisky. Lashbrook was substantiated to some extent by the informer Jones, whose evidence was of such a dubious character, and who was so contradicted, that the court in its instructions to the jury described him as "a man of pitifully weak character."

Mr. Lane, who was deputy prohibition administrator of the Western district of Missouri, testified to the reputation of this place as being one where intoxicating liquors were kept, bartered, and sold. While appellant was being taken in a car by the officers to Springfield, he told them that Jones had double-crossed him and caused him to sell liquor to a prohibition agent.

There was evidence on the part of appellant of his good reputation in the community in which he lived. Appellant in his testimony

admitted that his place had been raided at one time, but denied that any liquor was there found.

A number of assignments of error are presented. Some are readily disposed of. The question of error in overruling appellant's demurrer to the government's evidence at the close of the government's case was waived by failing to present the demurrer at the close of all the evidence.

The question as to a technical defect in the information, to wit, that it purports to be founded upon the affidavit of W. Harold Lane, when no such affidavit appears, is raised for the first time in this court. There is no showing that a warrant was issued on the information. Appellant was arrested in June, 1929, and the information was filed October 10, 1929. Trial was had October 11, 1929. Appellant was arrested long before the information was filed. The failure to verify the information under these circumstances was certainly not a fatal defect. That the information stated a crime against the government is unquestioned. The alleged defect was not called to the attention of the trial court. It is too late to raise it now. Dismone v. United States (C. C. A.) 12 F. (2d) 63; Beach v. United States (C. C. A.) 19 F.(2d) 739.

The important questions raised by the assignments of error are with reference to the introduction and exclusion of testimony and as to the alleged improper cross-examination of certain witnesses.

Berry Jones was asked on cross-examination if, while he was in the employ of the government, carrying the government mail, he had not been convicted or did not plead guilty to transporting liquor in violation of the National Prohibition Law (27 USCA § 1 et seq.).

Evidence of the conviction of crime as affecting the credibility of a witness is limited to conviction of a felony, an infamous crime, or a crime involving moral turpitude. Lawrence v. United States (C. C. A.) 18 F. (2d) 407; Scaffidi et al. v. United States (C. C. A.) 37 F.(2d) 203.

It is not entirely clear in the record as to whether the appellant was attempting to show that Jones had been convicted for the transportation of liquor subsequent to the time that the Jones Act (27 USCA §§ 91, 92), which would make such transportation a felony, took effect, viz. March 2, 1929. The government contends that under the record it is apparent that the question related to the time before March 2, 1929. If it did, there was no error in excluding the evidence. If subsequent to the Jones amendment to the National Prohibition Act, then the exclusion thereof was error. Haussener v. United States (C. C. A.) 4 F.(2d) 884. The form of the question might call for an answer involving a transportation after March 2, 1929; i. e., a felony. The government's objection should have raised this question clearly and pointedly and its solution by the court would have been timely. This alleged error can easily be eliminated on another trial.

The witness Fulbright testified to the good reputation of appellant in the neighborhood where he lived, as to being an honest, peaceable, truthful, upright, law-abiding citizen. He also testified as to the good reputation of the place of business. The following occurred on cross-examination:

"By Mr. Keyes: Q. Did you know the Government had raided that rock house about eighteen months ago? A. No sir, I didn't.

"Q. You didn't know that? A. No sir.

"Q. What would you say as to the reputation of the rock house if the Government had raided it and found a quantity of intoxicating liquor there about eighteen months, or twenty months ago, and the proprietor of that place about nine months ago was arrested and charged with the violation of the National Prohibition Act and maintaining a nuisance. Now, with that fact established in your mind, would you then say that that place had a good reputation?

"Mr. Collins: The defendant objects to that question, if Your Honor please, because it assumes facts not proven.

"The Court: Objection overruled.

"Mr. Collins: Defendant excepts.

"Q. What would be your answer to that? A. I don't know as I just got that. Give that to me again.

"Q. Well, let us assume that the Government raided this place sometime ago and obtained a quantity of intoxicating liquor, and you knew about it, and then let us assume that the proprietor of that place had been arrested, charged with making a sale of whisky at that place, and you knew about it, with these facts in your mind and before you, would you then say that place had a good reputation? A. I don't think I would say so.

"Q. You don't think you would? A. No sir."

The witness Keeler testified likewise to the good reputation of appellant and that he

had not heard the reputation of the place he was operating questioned. The following occurred on cross-examination:

"By Mr. Keyes: Q. Did you know it had been raided by the Government sometime ago?

"Mr. Collins: We object.

"The Court: Objection overruled.

"Mr. Collins: Defendant excepts.

"A. I heard it had been raided sometime ago. That has been a year or so ago. I have not heard anything since then.

"Q. Did you hear Mr. Pittman had been arrested? A. I had not.

"Q. You didn't hear that until you came to court? A. I had no knowledge of that until I came here today. * * *

"Q. Now then you say it has a good reputation in that community, as being a place where intoxicating liquors are sold; that it has no reputation in fact of being a place where intoxicating liquors are sold? A. I can't say that I have ever heard it questioned.

"Q. Outside of the one time when the Government raided it? A. Yes, I heard they raided it; that was all. I knew nothing about it.

"Q. Assuming for the purpose of discussion that it had been raided, and you had known it was raided, with that knowledge in your mind and then assuming that you had heard that the proprietor or operator of the place had been arrested by the Government and charged with the sale of whisky there and maintaining a nuisance, then with that fact in your mind, would you still say it has a good reputation?

"Mr. Collins: Defendant objects to that question for the reason it does not tend to prove any issue in this case and is wholly incompetent, is an improper question and only tends to prejudice the jury.

"The Court: Objection overruled.

"Mr. Collins: Defendant excepts.

"Q. What would you say? A. Please repeat the question.

"Q. Assuming it has been raided by the Government sometime ago and you knew that, and assuming the operator of the place was again arrested by the Government charged with selling whisky there and maintaining a nuisance at that place and you knew that, with knowledge of those incidents in your mind, would you then tell this jury that it had a good reputation? A. I could not.

"Q. You could not? A. No."

Appellant admitted that his place had once been raided, but there was no evidence that he was arrested at that time, or that any intoxicating liquor was found. The questions on cross-examination are not entirely clear as to whether the arrest referred to related to the alleged crime charged in the information, or whether it was some other arrest. In the question to the witness Keeler, which we have set out, the phrase "was again arrested" is used, implying, of course, that there had been a previous arrest to the one with which the present case is concerned. The questions were rather deftly put, and combine statements concerning which there was no evidence with what the witness may have heard concerning the arrest on the charges in the information.

This method of cross-examination is not proper. A witness sufficiently qualified may testify as to the general reputation of a defendant as to good character prior to the time of the charges in the indictment or information in the community where he resides. He may be asked on cross-examination as to the sources and grounds of his knowledge and as to reports he has heard in the community concerning the character of the defendant. 10 R. C. L. § 124.

Underhill on Criminal Evidence, § 82, states the rule as follows: "A witness to good character may be asked on cross-examination whether he has heard rumors of particular and specific charges of the commission of acts inconsistent with the character which he was called to prove and generally as to the grounds of his evidence, not so much to establish the truth of such facts or charges, as to test his credibility and to determine the weight of his evidence."

In Sloan v. United States, 31 F.(2d) 902, 906, this court discusses the question of cross-examination of character witnesses. Some were asked if they had read in the St. Louis papers that a couple of days after the date of the alleged conspiracy officers had found 60 gallons of whisky in defendant's room. In holding this to be improper cross-examination, the court said: "But the matter put in issue was the *general reputation* which means the estimate generally held by those who know the party. It is no impeachment of that reputation to show that the character witness himself has seen a publication derogatory to the character of the party." And the Court held that the trial Court's discretion was exceeded in permitting these questions to be asked.

In State v. Brown, 181 Mo. loc. cit. 215,

79 S. W. 1111, 1116, the court said: "Hypothetical questions must be based upon the facts which the evidence tends to prove."

In People v. Elliott, 163 N. Y. 11, 57 N. E. 103, 104, questions framed very similarly to the ones objected to in this case were asked certain character witnesses on cross-examination. The question asked of two of the witnesses was this: "If it should develop that a judgment of the supreme court of this state had granted a divorce on the ground of cruel and inhuman treatment, and in that judgment it stated 'that at the house of Reuben Bixby, in the village of Greene, and at other places in the village of Greene, the defendant struck, kicked, choked, injured, and had frequently threatened to kill the plaintiff and said child, Grace B. Elliott, and the treatment and conduct of the defendant to and towards the plaintiff during said time has been cruel and inhuman, and such that it is improper and unsafe for the plaintiff and defendant longer to live together as husband and wife'—If that was attested as a fact in the supreme court, what would you say as to this man's character being good or bad?" The court said that this incompetent question was highly prejudicial to the defendant; that there was nothing before the court to show any such judgment of the Supreme Court; that it would have been competent for the district attorney to ask the character witnesses whether they had heard of the divorce proceeding and whether that changed their previously expressed opinion. The situation there, as here, was the statement of certain facts in the question asked on cross-examination of which there was no evidence whatever in the record, and the judgment was reversed partially on this ground.

In the recent case of Spalitto v. United States (C. C. A.) 39 F.(2d) 782, witnesses were introduced who testified to defendant's good reputation as a law-abiding citizen prior to the date of the charge. These witnesses were asked on cross-examination if they had not heard that the defendant had been arrested a few years before on the charge of operating a still and a saloon. Judge Gardner, in writing the opinion of this Court, reviewed the various authorities, and it was held there was no error in the ruling of the court permitting this cross-examination. Reference may be made to that case for a very complete citation of authorities. That case, however, is not similar to this one. There the witnesses were asked if they had *heard* that defendant had been arrested, etc. It was not stated to the witnesses, as was done in this case, that

certain facts existed which were not in evidence and from which they were asked to draw conclusions.

2 Wigmore on Evidence, § 988, states: "It is to be noted that the inquiry is always directed to the witness' hearing of the disparaging rumor as negativing the reputation. There must be no question as to the fact of the misconduct, or the rule against particular facts would be violated; and it is this distinction that the Courts are constantly obliged to enforce."

Here the witnesses were not asked as to reports they had heard—they heard them for the first time in questions put to them on cross-examination. A cross-examiner cannot state to a witness certain things as facts when there is no evidence in the record thereof and then ask his opinion thereon as to a defendant's general reputation as affected in part by the matters so stated. Any person's reputation for good character might be destroyed by such cross-examination. The mere arrest of a defendant cannot be shown as affecting his credibility. Many innocent men are arrested. Arrest might not affect one's reputation in a community as to character, and yet the statement to a witness that defendant has been previously arrested may tend to affect the witness' opinion on the question of reputation as to character and also to prejudice the jury against defendant. The lay mind does not stop ordinarily to distinguish between accusation of crime and conviction thereof. As there is no evidence in this record of a previous arrest of appellant for selling intoxicating liquors or for maintaining a nuisance, or that eighteen to twenty months before the trial a quantity of intoxicating liquor was found in a raid on his place of business, the statements to the witnesses in the question propounded on cross-examination that such were the facts were unfair and created around appellant an atmosphere of prejudice.

While the limits of cross-examination must, of course, be guided by the discretion of the trial court, Davis v. Coblens, 174 U. S. 719, 19 S. Ct. 832, 43 L. Ed. 1147; Quigley v. United States (C. C. A.) 19 F.(2d) 756; Eppinger & Russell Co. v. Sheely (C. C. A.) 24 F.(2d) 153; Portman v. United States (C. C. A.) 34 F.(2d) 406, cross-examination should not be permitted to be used to covertly convey to the minds of jurors suspicion and prejudice as to a defendant by a recital as facts of supposed matters not appearing in the evidence and wholly outside of the case.

We are satisfied that the court permitted government counsel to go too far in the cross-examinations of some of the character witnesses, resulting in serious prejudice to appellant.

The government attempted to show the reputation of appellant's place of business by the witness Lane, who was the deputy prohibition administrator of the Western district of Missouri. He testified that he was familiar with the reputation of this place in the community as being a place where intoxicating liquors were kept, bartered, and sold. It appeared he had been in Taney county, Mo. He did not seem to be acquainted with anybody there, as developed on cross-examination. He did not know the banker, the mayor, the minister, the merchants, or any of the farmers around there, and had not talked to any of them about the question of appellant's reputation. He had talked to three men from Branson, and had received some complaints through the mail and by word of mouth from his own men. The only person whom he could identify with whom he had talked was Mr. Good, who lived several miles from Branson. The other two men came to his office at Kansas City to report conditions at Branson. He could not remember their names. General reputation as to good character of a defendant is founded on the opinion of the people in the community where the defendant lives. The test is the consensus of opinion of the community, and, while it may be possible, of course, that one living outside a community may know of the general reputation of a defendant therein, ordinarily the proper witnesses to prove this are citizens of the community.

In Ruling Case Law, vol. 10, p. 954, § 125, it is said: "Testimony as to character by a witness sent into the neighborhood where a party formerly lived, to learn his character, is not admissible. The general character is the estimation in which a person is held in the community where he resided, and, ordinarily the members of that community are the only proper witnesses to testify as to such character. It would be unsafe to rely upon the testimony of the defendant's agent, sent into that community an entire stranger, it may be, to collect information to subserve the defendant's view in the suit. Such witness would not speak of his knowledge of the plaintiff's character, or give his own opinion in relation thereto, but barely state his conclusion upon the information received from others. This would be hearsay evidence and nothing more."

We think the evidence was insufficient to show Mr. Lane qualified to testify on the subject of reputation of the place. However, as the only objection to his testimony was that his evidence tended to prove no issue in the case, it is probable that any question of his qualification was waived.

Judge Keeler was permitted to testify on cross-examination that he understood that Charles Lawrence had an interest in the defendant's place of business. Charles Lawrence was shown in the record on his cross-examination to have at one time entered a plea of guilty of receiving stolen property in an interstate shipment. To show that he was closely connected with appellant in the operation of this place by a mere assumption on the part of a witness was prejudicial to appellant. No objection seems to have been made to this evidence on cross-examination, but a motion was made to instruct the jury to disregard the same. As the evidence was introduced without objection, appellant is not in a position to now question it.

No exceptions were taken to the charge of the court. Counsel for appellant at the close of the instructions said, "The defendant has no exceptions." In view of another trial of this case we think it is not out of place to suggest that the instructions in some respects are close to the border line of argument, especially in discussing the evidence of Mr. Lashbrook. Too much emphasis is laid upon his testimony. Also we suggest that the instruction as to the use of a false name by Mr. Lashbrook is hardly warranted. The court said: "On the question of whether Lashbrook ever used a false name, the Court is stating to you that no unfavorable inference should be drawn by you by virtue of that fact, because it is in accord with the practices of the Government's agents and the agents of other of the states in seeking to ferret out crime, to detect crime, to give names so the real name would be concealed from the person engaged in committing crime and sought to be detected in the commission of crime." It would seem that the question of the use of a false name was a proper matter for a jury to consider as bearing on the character of the witness. It is a circumstance that cannot be merely wiped out under the assumption that a court will take judicial notice that such are the practices of the government's agents in ferreting out crime. There is nothing in the record to support any such statement, and this court is not willing to approve the doctrine that the use of false names by government agents in ferreting out crimes has be-

come so established that a jury can give the circumstance no consideration in weighing the testimony of a witness. We have, in view of another trial, discussed a number of errors where no proper exceptions have been preserved. Possibly no one of them standing alone would be sufficiently prejudicial to require a reversal of the case, but marshalling them impresses us with the idea that the trial was not such a fair one as appellant was entitled to. We reverse the judgment because of error in not sustaining objections to certain statements in the hypothetical questions submitted on cross-examination to some of the character witnesses of appellant.

Reversed and remanded.