## RIEBE v. UNITED STATES.
### No. 7932.

Circuit Court of Appeals, Ninth Circuit.
March 16, 1936.

George D. Toole, of Butte, Mont., for appellant.

John B. Tansil, U. S. Atty., and Donald J. Stocking, Asst. U. S. Atty., both of Butte, Mont., for the United States.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal by Charles F. Riebe, defendant below, from a judgment of conviction under an indictment charging him in the first count thereof, with the offense of carrying on the business of a retail liquor dealer of distilled spirits within the meaning of the United States Revenue Laws (26 U.S.C.A. § 193, now 26 U.S.C.A. § 1397 (a) (1), without having paid the special tax therefor required by law. The indictment is in two counts. The second count was dismissed before trial. The case came on for trial before the court sitting

with a jury. At the commencement of the trial, Riebe petitioned for a return of certain property alleged to have been illegally seized and a motion to suppress evidence in relation thereto on the ground that appellant's dwelling house was entered without a search warrant and property seized therein, in violation of his legal rights, was filed and presented, the ruling thereon was deferred until the conclusion of all the evidence.

Jack Marmon, an inspector for the Revenue Department, was the government's only witness. His testimony discloses that on January 26, 1935, he, together with a special officer in the Indian Service, one J. C. Curtis, who died before this case was tried, entered the premises of the appellant in the town of Charlo, Lake county, Montana, where appellant was then conducting a confectionery and ice cream business, and sold school supplies and magazines, also beer and soft drinks. This place where the business was carried on was a large room in the rear of which, separated by a partition, appellant maintained living quarters for himself and family. The witness stated that when they entered the building they found a man cleaning up about the place. They inquired for appellant and the man said he would get him. In a few minutes the appellant came in, accompanied by his wife. The witness advised the appellant that he was an Internal Revenue officer and had reports that appellant was selling whiskey in the place without having a retail liquor dealer's license. Appellant said he did not have any of these Revenue Stamps and had never heard of them. Further he said, "I have no whiskey here— if you don't believe me, look around, look any place you want to." The officers then began to search the room in which appellant conducted his aforesaid business and appellant left. Marmon further testified he followed appellant and saw him pick up a case of whiskey in his bedroom in the back part of the house and go out of the back door of the bedroom with the whiskey; that he followed appellant and watched him cover the case of whiskey with a cardboard box and rubbish, and that thereupon he arrested him. The witness also stated that Officer Curtis was in the same bedroom, and had found four pints of Walnut Hill whiskey and four pints of Town Tavern whiskey which appellant admitted were his. Marmon further stated that a full case of twenty-four pints of Cream of Kentucky whiskey was taken from the building. No moonshine whiskey was found on the premises—it was all tax-paid whiskey. No unsealed bottles were found. Appellant admitted he had not paid any license tax. The officers carefully searched the large room where the soft drink parlor was operated, but did not find any liquor of any kind there, nor did they smell the odor of liquor, and there was nothing to indicate that any liquor was kept there.

At the conclusion of the evidence, the objection to the liquor being received in evidence on the ground that the same had been procured without lawful search or seizure was overruled. In the circumstances here shown the court's ruling was correct.

Witness Marmon further testified that he was acquainted in the town of Charlo, Montana; that in his work he had an opportunity to know the reputation of persons in Charlo, Montana, and the sales of liquor; that he had knowledge of the reputation of the defendant; and that defendant had the reputation of carrying on the business of a retail liquor dealer without paying the special tax of $25. On cross-examination the witness stated that he lived at Missoula, Montana, 55 miles from Charlo; that he had never lived in the town of Charlo but had passed through there, but never stopped; that he was not acquainted with any person there; that he had not at any time discussed appellant's reputation with any one who lived in the community where he lived, or the reputation of his place of business.

On redirect examination the following took place:

"Q. Mr. Toole asked you whether you had discussed the reputation of these premises with anyone—did you? A. I did.

"Q. Concerning the reputation you testified that this defendant had the reputation of carrying on the business of a retail liquor dealer at his premises? A. Yes.

"Q. Was that reputation as to the sale of drinks by the glass or as to the sale of whiskey by the bottle?

"Mr. Toole: I object to that question as incompetent, for the reason that it calls for hearsay evidence, and further it is evidently an attempt to prove the reputation of the place by a witness who has not shown himself qualified to prove such reputation. The court will recall that I merely questioned the witness as to whether he

ever talked to anyone in the community in which the defendant lives.

"The Court: He said that immediate neighborhood. I believe he meant the town or village itself. It would be inferred from that he had discussed with someone who had lived there, or knew the circumstances. You can find that out by inquiry. Objection overruled.

"Mr. Toole: Note an exception.

"The Court: An exception will be noted.

"The Witness: Both."

Wigmore on Evidence, 2d Ed., vol. 1, p. 1108, § 692, states the rule as follows: "The admissible reputation is that which is built up in the neighborhood of a man's domicile or in the circle where his livelihood is followed; and it is of slow formation. It is the sum of all that is said or not said for or against him. Consequently, its tenor can be adequately learned only by a residence in the place, not by a mere visit of inquiry, or by a casual sojourn, or by a conversation with a resident who reports the reputation."

"The general character is the estimation in which a person is held in the community where he has resided, and, ordinarily, the members of that community are the only proper witnesses to testify as to such character." 10 R.C.L. p. 954, § 125.

Circuit Judge Kenyon in Pittman v. United States, 42 F.(2d) 793, on page 798 (C.C.A.8), in discussing a similar situation, said: "The government attempted to show the reputation of appellant's place of business by the witness Lane, who was the deputy prohibition administrator of the Western district of Missouri. He testified that he was familiar with the reputation of this place in the community as being a place where intoxicating liquors were kept, bartered, and sold. It appeared he had been in Taney county, Mo. He did not seem to be acquainted with anybody there, as developed on cross-examination. He did not know the banker, the mayor, the minister, the merchants, or any of the farmers around there, and had not talked to any of them about the question of appellant's reputation. He had talked to three men from Branson, and had received some complaints through the mail and by word of mouth from his own men. The only person whom he could identify with whom he had talked was Mr. Good, who lived several miles from Branson. The other two men came to his office at Kansas City to report conditions at Branson. He could not remember their names. General reputation as to good character of a defendant is founded on the opinion of the people in the community where the defendant lives. The test is the consensus of opinion of the community, and, while it may be possible, of course, that one living outside a community may know of the general reputation of a defendant therein, ordinarily the proper witnesses to prove this are citizens of the community."

It was error to admit this testimony. The witness was not competent to testify on this question of reputation.

Judgment reversed.