## MOORE v. UNITED STATES.

### No. 9960.

Circuit Court of Appeals, Fifth Circuit.

Nov. 6, 1941.

---

Clint W. Hager, of Atlanta, Ga., for appellant.

J. Saxton Daniel, U. S. Atty., of Savannah, Ga., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

After the trial of this case, but before the approval and settling of the bill of exceptions, the trial judge died. The bill of exceptions was prepared and presented to the judge designate for the Southern District of Georgia. Counsel failed to agree on the bill as presented, and after a full hearing the judge designate ordered the inclusion of certain evidence in the bill, and then signed and approved it. Neither side is satisfied with the bill of exceptions as approved, and the District Attorney now moves that the bill be further extended and amended by including certain other evidence which was omitted from the bill, and the appellant moves for diminution of the record. Attached to the motion of the District Attorney is a certified transcript of all the testimony taken in the case. The trial judge being dead we have tried to search out and find if the bill of exceptions fully presents a sufficient detail of the evidence in the case in conformity with the Rules and Forms in Criminal Cases, Rule IX, 18 U.S.C.A. following section 688, 292 U.S. 659, 54 S.Ct. xxxvii, referring to Rule 8 of the Rules of the Supreme Court of the United States, 28 U.S.C.A. following section 354. Decision must turn absolutely on the evidence, and since a transcript of all the evidence, properly certified, is before us, we grant the motion of the District Attorney and include it and make it a part of the bill of exceptions. In arriving at decision we have not only considered the bill of exceptions as approved by the court below, but we have also considered the other evidence in the case. Our decision to include the evidence in the bill of exceptions is limited to the facts of this case, and is not to be considered as authority for amending bills of exception by this court. Cf. Ray v. United States, 301 U.S. 158, 57 S.Ct. 700, 85 L.Ed. 976.

An indictment in five counts was returned against Victor S. Moore and others. The first count charged a conspiracy to violate the Internal Revenue Laws, and the other four counts charged substantive violations of these laws. Moore was found guilty on all counts of the indictment and was sentenced to serve two years in the penitentiary and pay a fine of $2,500, and he has appealed.

The testimony discloses that Moore lived in McDuffie County, Georgia, where he owned a plantation containing from fourteen hundred to three thousand acres of land; that he employed Dupree Carey, Joseph E. Poss, "Shuck" Vandiviere, Ralph Johnson, and others to engage in the illegal manufacture of distilled spirits on his plantation; that in pursuance of such employment, and during the period of time covered by the indictment, materials were procured and distilleries were set up and operated at seven different places on Moore's plantation, and liquor was made; that Poss, Carey, Vandiviere, Henry Roman, Wash Booker, and others worked for Moore at one or more of the distilleries; that Moore authorized a merchant at Athens, Georgia, to deliver yeast, malt, and sugar to Carey and others whenever they called for it; that he agreed to and did pay for such materials, and that these materials were used in the manufacture of liquor on the Moore plantation; that such materials were delivered to certain people for Moore until the Internal Revenue Department instructed the merchant to make reports of sales exceeding one hundred pound lots, after which time Moore and his associates discontinued large purchases of such materials.

Joseph E. Poss and "Shuck" Vandiviere, two of the co-conspirators, testified for the Government, and their testimony tended to support the allegations of the indictment. Evidence was also offered to show that the reputation of Poss and Vandiviere for truthfulness was bad, and that they were not worthy of belief on oath. Many witnesses testified as to the good reputation of Moore, and among them was an ordinary of his county, two sheriffs, a physician, and a tax collector.

L. J. Norris, who had been sheriff of McDuffie County for seventeen years, testified that Moore's reputation was good; that in the fall of 1938 he raided a still on Moore's land; that Moore had told him about the still and requested him to raid it; that this still was within about five hundred yards of the house of Poss, and about two and one-half miles from the residence of

Moore. Norris further testified that he went to Moore and told him that he had heard that he was engaged in the illicit manufacture of liquor, and that he warned him. It was after this that Moore told him about the still and asked him to raid it.

Several witnesses testified that they had hunted all over Moore's lands from time to time during the hunting season for many years; that at different times Moore invited parties to hunt on his lands; that a public road ran by Moore's home and was kept up by the county; that hunters, including sheriffs and deputies, hunted at will on the lands. This evidence was offered to show that no stills were on Moore's property.

W. A. Bradshaw, a witness for the defendant, was asked this question after he had testified that he knew Moore: "Do you know his reputation in the community in which he lives as to violating the liquor laws and making liquor?" Without objection on the part of the Government, the Court said: "Just one minute, please. Can you limit that where you are putting in his character?" Counsel for defendant answered: "Yes, sir." The Court continued: "You cannot limit it to one particular inquiry, to an inquiry connected only with liquor." Counsel for defendant: "I think it is limited to the charge made against Moore, your Honor." The Court said: "I do not agree with you. If you are making a defense on the basis of good character, that is a general defense. There may be some questions asked on cross examination that would go beyond the question of making liquor. If you wish to introduce his good character it will have to go the full scope of it. I so rule." Thereupon the witness testified, "I know the general reputation of Mr. Victor Moore in the community in which he lives. It is good."

We are of opinion that the long and argumentative cross examination of the defendant's witness Allen Parnell, which examination was conducted both by Government counsel and the Court, was in many respects prejudicial and erroneous. Cf. Pittman v. United States, 8 Cir., 42 F.2d 793. Error is also to be found in the testimony of G. H. Lunceford, a Government witness, in that after he had testified that Moore had a reputation for violating the Internal Revenue Laws for about five years, he further testified: "I know the reputation of Mr. Victor Moore in the community in which he lives by hearsay. I have heard negroes who have worked for Mr. Moore and who live in Wilkes County speak of Mr. Moore. There were two of these negroes; they are the only two who I know told me of him." Counsel for defendant: "Now, your Honor, I don't understand that a statement of two people will constitute a reputation?" The Court: "That is a matter of argument. Certainly I cannot rule it out. It is for you to argue and the jury to determine." The witness continued: "The names of the two negroes I have referred to were Roman and Booker."

M. W. Vick and Neil D. Evans, employees of the Internal Revenue Department, were witnesses for the Government, and were permitted by the Court not only to testify as to the reputation of Moore, but they were also allowed to go into detail as to what certain persons had said about Moore. Vick, on cross examination, although not being questioned as to what had been said to him, testified: "As to who I have heard say anything about Mr. Victor Moore's reputation as a violator of the Internal Revenue Laws, all of the officers in the surrounding counties have complained to me about him, and also the bootleggers in that section have also complained—Tom Crow for one. Tom Crow was either convicted or plead guilty to a violation of this law in this court. He complained every time he put up a still we would cut him down and wouldn't cut down Victor Moore * * *."

Neil D. Evans testified: "I hold a position of Special Investigator in the Alcohol Tax Unit with the United States Government, and have held such position for about eleven years. My duties are in connection with the violations of Internal Revenue Laws, where seizures and arrests have been made and where it is believed by the seizing and arresting officers that they have only caught the hired help, and they do not have the man responsible for such operations, and to investigate the man who was thought to be responsible under the laws of conspiracy. I entered into the investigation of this case sometime about the middle of the year. I know the reputation of Mr. Victor Moore, one of the defendants in this case, in the community in which he lives, as a violator of the Internal Revenue Laws. That reputation is that he is a persistent violator and operator on a large scale, hiring other men to do the work for him, and financing and backing the operation himself." Counsel for defendant here inter-

posed an objection: "May it please your Honor, we object to the witness' statement as to his being a persistent violator, etc., where he goes into such details. He was just asked one question, if he knew Mr. Moore's reputation, and as I understand the rule the witness should answer yes or no, without going into the various lines of hearsay testimony about being a large scale operator and having employees do the work for him. I do not think that admissible." The Court: "That is what he said his reputation was and that was a description of it. If he just limited it to the jury to the word 'bad' that would not enlighten them as to what this witness says he knows."

 Much of the testimony of the witnesses Vick and Evans consists of inadmissible hearsay statements. To be sure, where, as here, reputation has been put in issue by the defendant, wide latitude should be given on cross examination to go into the reputation of the accused for violation of the Internal Revenue Laws. Reputation is derived from what the people in a given community say or do not say about an accused. Mere rumors are not reputation but reputation involves a notion of the general estimate of a person by the community as a whole. Reputation is not what a few persons say or may think about the accused, it is what the community generally believes. Greenleaf on Evidence, 16th Ed., Vol. 1, p. 586; Wigmore on Evidence, 2d Ed., Vol. 3, pp. 358-366, §§ 1610-1615; Wharton's Criminal Evidence, 11th Ed., Vol. 1, § 333; Underhill's Criminal Evidence, 4th Ed., § 170; 20 Am.Jur. 305, § 326; 22 C.J.S., Criminal Law, § 678; Pittman v. United States, 8 Cir., 42 F.2d 793; Stewart v. United States, 70 App.D.C. 101, 104 F.2d 234; Keady v. United States, 10 Cir., 62 F.2d 689. Moreover, as a general rule, it is error for a witness testifying as to reputation to quote what others have had to say. See Wigmore, supra, § 1610 (2), note on Thomas Hardy's Trial, 24 How.St.Tr. 1079. If much of the evidence in this case is permitted to stand as legal and relevant it would not be necessary in the future to summon and bring into court witnesses to testify, but officers could appear and inform the court and jury what the witnesses knew, and what they would testify.

The defendant should have been permitted to call his witnesses in rebuttal to testify as to his reputation for violation of the Internal Revenue Laws. This right had been denied to him on direct examination.

The Government called rebuttal witnesses to testify that Moore was a persistent liquor law violator, and the defendant should have been permitted to question the witnesses about the alleged violations and search out, if he could, any interest or bias of the witnesses. Counsel requested the Court to permit such rebuttal evidence and the Court said, "I have ruled on that, have given you my views, and will stick to them. If I have erred you can correct it." Cf. Edgington v. United States, 164 U.S. 361, 363, 364, 17 S.Ct. 72, 41 L.Ed. 467.

The evidence tends to point to the guilt of the accused, but we are not prepared to say that the inadmissible hearsay evidence permitted to go to the jury was not prejudicial. The Court gave exceptions to the defendant to all his rulings, and many of the rulings on the admission and exclusion of evidence were repeated throughout the trial. Since a new trial will be had we find it unnecessary to point out each and every error occurring in the evidence, for what we have said will, we think, be sufficient for a new trial.

The judgment is reversed and the cause is remanded for a new trial in conformity with this opinion.

Reversed and remanded.